**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Dair Renee BANKS and Darnell Williams, Defendants-Appellants.**

**Nos. 73–2089, 73–2041.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 14, 1974.

Decided July 23, 1975.

Kent H. Musser, Duge Butler, Jr., Indianapolis, Ind., for appellant.

Stanley B. Miller, U. S. Atty., Indianapolis, Ind., for appellee.

Before FAIRCHILD, Chief Judge, HASTINGS, Senior Circuit Judge, and SWYGERT, Circuit Judge.

FAIRCHILD, Chief Judge.

Appellants Dair Renee Banks and Darnell Williams were each charged in a three count indictment with one individual count of distribution of heroin in violation of 21 U.S.C. § 841(a)(1) and one count of conspiracy to distribute heroin

in violation of 21 U.S.C. § 846.[1] On September 8, 1973, after a jury trial, both Banks and Williams were found guilty as charged on each count of the indictment.

The evidence adduced at trial concerning the transactions charged in the indictment was provided, almost entirely, by two government informers, Hans Pottgiesser and Jill Sip. Pottgiesser testified that, on November 2, 1972, he met with appellant Williams in a Bloomington, Indiana pool hall and arranged to purchase $40.00 worth of heroin. Later that evening, Pottgiesser and Sip accompanied Williams to the home of appellant Banks where the purchase was made. Pottgiesser testified that he gave $40.00 to Williams, who then went into the bathroom and returned with four foil-wrapped packages, containing a white powder, which he laid on a table in front of Pottgiesser and Banks. Sip, who was seated in a different room, did not recall seeing Pottgiesser pay Williams, but testified that she witnessed Williams enter the bathroom and return with the four packages. Shortly after the exchange, Pottgiesser and Sip left the house and met with representatives of the Indiana State Police who recovered the four foil-wrapped packages. Subsequent analysis established that their contents included heroin.

Pottgiesser's testimony further disclosed that, on November 10, 1972, he returned to Banks' home where Banks offered to provide him with a quantity of heroin to sell. Several days thereafter, Pottgiesser received a telephone call from a person he identified as Banks who indicated that he had twelve "bags" of heroin available and that the charge for the drug would be $120.00. Pottgiesser testified that, on November 13, 1972, he drove to Banks' home and received twelve small packages from Banks. After leaving, Pottgiesser drove to a pre-arranged meeting place where a local Bloomington police officer searched him and recovered the twelve packages. Pottgiesser returned to the home the following day and, in the presence of Banks, gave $120.00 to one Walter Smith, the third individual charged under the instant indictment.[2] Pottgiesser testified that Banks then informed him that "the heat was on" and that no more heroin would be available. Subsequent analysis of the contents of the twelve bags recovered from Pottgiesser revealed the presence of heroin.

In an attempt to attack the credibility of Pottgiesser and Sip, appellants sought, during cross-examination, to elicit admissions concerning past and present drug use. They were successful in establishing that Pottgiesser had been involved with drugs since 1968 or 1969 and that, although he denied being addicted while residing in Bloomington from July through November, 1972, he had taken heroin seven or eight times during this period, and had also used marijuana and cocaine. Under questioning from the trial court, Pottgiesser also admitted more specifically to having taken heroin on two or three occasions during October and November, 1972 while cooperating in the investigation of appellants, though he denied having taken any on the actual days about which he testified. Sip admitted to having been addicted to heroin from January to April, 1972. After this date, she testified to only having used marijuana.[3]

1. Count one of the indictment charged Williams with the knowing distribution of four foil wrapped packages of heroin on or about November 2, 1972. Count two charged Banks and a third party not involved in this appeal with the knowing distribution of twelve foil wrapped packages of heroin on or about November 13, 1972. Count three charged Banks, Williams and another with conspiring unlawfully to distribute heroin. The overt acts alleged included a meeting, on or about November 2, between Williams, Banks and the third coconspirator.

2. Walter Smith, though named in the indictment, was a fugitive at the time of trial and his case is not before us.

3. In addition to the above admissions, both Pottgiesser and Sip testified that they were paid by the authorities for obtaining drug related prosecutions. Moreover Pottgiesser revealed that his cooperation was in exchange for dismissal of a pending criminal charge.

## I.

During cross-examination of Pottgiesser, appellants inquired into his present drug use during the trial. The district court sustained an objection to this line of inquiry and refused to permit a reply. Shortly after Pottgiesser and Sip had left the stand, appellants offered to call Dr. John Henderson, a physician whose testimony, it was asserted, would reveal that, at the time of trial, both witnesses were in fact taking drugs and actively participating in a methadone maintenance treatment program. The court, after hearing argument, declined to permit the testimony concluding that the jury had had ample opportunity to observe the witnesses' demeanor and ability to testify.

Appellants assert that these rulings constitute reversible error, in that the court, by precluding all direct or extrinsic inquiry into drug use by Potgiesser and Sip while testifying, prevented a full examination of their competency as witnesses to testify. We disagree.

■ Competency of a witness to testify, as distinguished from the issue of credibility, is a limited threshold decision by the trial judge as to whether a proffered witness is capable of testifying in any meaningful fashion whatsoever. *United States ex rel. Lemon v. Pate,* 427 F.2d 1010, 1012–1013 (7th Cir. 1970); *compare* Federal Rules of Evidence (P.L. 93–595; 88 Stat.), Rule 601 *et seq.* Appellants did not seek a *voir dire* hearing to examine the witnesses' ability to testify. *Compare, United States v. Crosby,* 149 U.S.App.D.C. 306, 462 F.2d 1201, 1202 (1972); *see generally,* McCormick, *Evidence,* § 70, pp. 149–150 (Cleary rev. 1972). Both witnesses testified extensively, providing ample opportunity for the trial judge to consider their capacity. We have reviewed the trial transcript carefully and find nothing therein to contradict the court's express conclusion that the witnesses were competent to testify.[4]

■ Accordingly, the only issue presented here is whether the trial court's limiting of cross-examination and proffered extrinsic testimony prevented the jury from fully and accurately assessing the witnesses' credibility. *United States v. Davis,* 486 F.2d 725, 726 (7th Cir. 1973); *United States v. Haili,* 443 F.2d 1295, 1299 (9th Cir. 1971). It is well established that the extent of cross-examination lies fully within the sound discretion of the trial court. *United States v. Isaacs,* 493 F.2d 1124, 1162 (7th Cir. 1974). This discretion is not, however, absolute. In a case such as the present, evidence of drug use at the time of trial is clearly relevant to the matter of a witness' credibility as a possible indication of a drug-related impairment in his ability accurately to recollect and relate factual occurrences while testifying. *Wilson v. United States,* 232 U.S. 563, 568, 34 S.Ct. 347, 58 L.Ed. 728 (1914).

■ Assuming that counsel's question to Pottgiesser concerning his present drug use was sufficient to preserve the point,[5] we find the court's refusal to permit a response to be in error. It is clear that a trial judge has broad control over the scope and content of cross-examination when it is directed into such highly emotive areas as narcotics use, which carry with their very nature serious dangers of undue prejudice. *Tinker v. United States,* 135 U.S.App.D.C. 125, 417 F.2d 542, 544–545 (1969), *cert. denied,* 396

---

**4.** The district court, in refusing to permit any testimony from Dr. Henderson, expressly found that "[t]he witness Pottgiesser and the witness Sip appeared, and the Court has viewed many witnesses, and the Court noticed nothing unusual about the appearance or the actions of either one of these two witnesses."

**5.** During cross-examination of Pottgiesser, the question was put: "Are you presently using drugs?" The court sustained an objection by the government and the matter was not returned to. While it may be argued that, from the form of the question, it is unclear whether this was intended to focus on the relevant issue of the witness' drug use during trial, we conclude that a sufficient basis exists to find preservation of the issue.

U.S. 864, 90 S.Ct. 141, 24 L.Ed.2d 118; *cf.* Federal Rules of Evidence, *supra,* Rule 403; 611(a)(3). However, in seeking to limit and avoid such prejudice, a judge may not absolutely foreclose all inquiry into an issue such as the narcotics use during trial of an important eyewitness and central participant in the transaction at issue. Once a proper foundation has been established, through, for example, a showing of reasonably contemporaneous drug use,[6] the issue is open for inquiry. *United States v. Kearney,* 136 U.S.App.D.C. 328, 420 F.2d 170, 174 (1969). The jury may not properly be deprived of this relevant evidence of possible inability to recollect and relate. *Wilson v. United States, supra;* 3A Wigmore, *Evidence,* § 934 (Chadbourn Rev. 1970).

■ After a careful consideration of the record before us, however, we conclude that, in the context of this trial, the court's error must be deemed harmless. The jury was correctly instructed to consider the ability of the witness to recollect and relate when determining the final weight to be afforded the testimony. Appellants elicited, on cross-examination, substantial information concerning Pottgiesser's prior use of drugs. While the issue of a witness' drug use during trial has considerable relevance to credibility, we conclude that had the jury found his testimony to be at all confused or uncertain, the admissions before them would have been sufficient for consideration in their ultimate determination of the truthfulness and reliability of his testimony.

■ Nor do we find the trial court's refusal to permit the calling of Dr. Henderson, the psychiatrist whose testimony was in part offered to establish that Pottgiesser and Sip were using drugs during trial, to constitute reversible error. It has been established practice in this Circuit that the Federal Rules of

Evidence "should be used by the district courts as guidelines" in making evidentiary rulings. *United States v. McCarthy,* 445 F.2d 587, 591 (7th Cir. 1971). Rule 608(b) establishes that "specific instances of conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of a crime . . . may not be proved by extrinsic evidence."

■■ Application of this rule to the case at bar will not work any injustice. With regard to Jill Sip, we note that appellants failed to inquire, during cross-examination, into the issue of whether she was presently using drugs at the time of trial. Failure to establish the proper foundation clearly provides an acceptable justification for precluding extrinsic inquiry into the issue of current drug use. *Cf. United States v. Leonard,* 161 U.S.App.D.C. 36, 494 F.2d 955, 971–72 (1974). With regard to Pottgiesser, we note that the extrinsic evidence offered on the point, testimony from a psychiatrist and physician concerning treatment and identity of a patient, could not have been disclosed under applicable federal statutory regulation of drug abuse prevention and treatment programs absent an express and knowledgeable waiver or a discretionary court order. 21 U.S.C. §§ 1175(a); 1175(b)(2)(C). We therefore conclude that the rejection of the offer of proof was not in error.

## II.

Appellants next urge that the district court committed reversible error in improperly limiting the cross-examination of witness Pottgiesser concerning certain drug-related activities about which he testified in a prior criminal proceeding. Upon careful review of the scope of cross-examination permitted, we find no prejudicial error.

---

**6.** The trial court, with its sensitivity to the possible prejudice which might result from such preliminary inquiry into the subject of past narcotics or drugs use, may determine to conduct this initial exploration outside of the jury's presence.

■ Pottgiesser's sworn testimony in the prior proceeding, *United States v. Drake,* No. IP 72–CR–270, establishes that he was addicted to heroin and engaged in illicit narcotics dealing during the period of 1967 through 1971, prior to his reassociation with the Indiana State Police in 1972. Appellants argue that they were entitled to question the witness concerning these admissions and impeach any inconsistent response. Cross-examination of Pottgiesser below was extensive and the jury was exposed to substantial discrediting evidence. The testimony which appellants sought to adduce concerned events which transpired several years before the occurrences upon which the indictment was predicated. We can discern no abuse of discretion in the trial court's refusal to permit cross-examination concerning these collateral matters.[7]

■ Appellants also sought to utilize Pottgiesser's prior testimony to establish certain alleged inconsistencies with his testimony concerning the nature and amounts of payments received in connection with his cooperation with the authorities. Pottgiesser admitted during cross-examination that his initial cooperation with the police was prompted by the existence of a pending state criminal charge which, in return for his assistance, was subsequently dismissed. He also testified that he received financial payments for his continuing cooperation. Under these circumstances, disputes over the exact amount or formula for payment from the police are insubstantial and any error in refusing to permit impeachment would be harmless.

We have reviewed the record carefully and conclude that appellants' contentions of prejudicial error are without merit. The judgments appealed from are, accordingly, affirmed.

---

7. *United States v. Kinnard,* 150 U.S.App.D.C. 386, 465 F.2d 566, 570–74 (1972), held that the question of the drug addiction of an informer-witness during the period in which he cooperated in the investigation and prosecution of the case against the defendant is relevant as a possible indication of bias and, as such, may be inquired into on cross-examination and, if a proper foundation is established, the witness may be extrinsically impeached. Appellant was permitted to inquire into this area and has offered no prior testimony inconsistent with Pottgiesser's denial of addiction during this critical period. As noted above in part I, *supra,* the offered testimony of Dr. Henderson concerning drug use and addiction was privileged, at least under federal regulations, and there was no abuse of discretion in rejecting the offer.