UNITED STATES of America,
Plaintiff-Appellee,

v.

Larry D. CAMERON,
Defendant-Appellant.

No. 86–1225.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 21, 1986.

Decided March 10, 1987.

Ralph Ruebner, Assoc. Prof. John Marshall Law School, Chicago, Ill., for defendant-appellant.

Mark D. Stuaan, L. Lee Smith, Asst. U.S. Attys., Gerald D. Fines, U.S. Atty., Peoria, Ill., for plaintiff-appellee.

Before POSNER and FLAUM, Circuit Judges, and GRANT, Senior District Judge.*

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

FLAUM, Circuit Judge.

Larry Cameron appeals his conviction for conspiring to import, manufacture, and sell firearms without a license. At trial, Cameron sought to impeach a key government witness by introducing evidence that the witness had a history of drug use and had been convicted on a misdemeanor charge of possessing a switchblade. Cameron also sought to introduce evidence that his alleged co-conspirator had fled the country while he had remained. Cameron asserts that the district court erred by refusing to admit any of this evidence. Cameron also claims that the government did not introduce sufficient evidence to allow the jury to find him guilty, and that the district court relied on improper evidence in imposing a $5,000 fine. We reject each of these claims and affirm the judgment of the district court.

## I.

The appellant is a gunsmith. In June, 1983, the appellant and John Parsons, an Australian national, entered into an agreement to purchase 2,500 disassembled M-1 rifles from Odin International, a weapons importer located in Virginia which had acquired the rifles from the government of Peru. The appellant and Parsons arranged to have the rifle frames sent from Virginia to Windsor, Ontario, where the appellant operated a gun shop. The appellant later transported the remaining M-1 parts (the barrels and stocks) from Virginia to Romulus, Michigan, a town located near Windsor, where he had rented a workshop.

The appellant claims that he originally intended to import the rifle parts into Canada so that he could reassemble the rifles and sell them in time for the "Christmas trade." However, the appellant did not follow through on this plan. Instead, he sold the M-1 receivers, stored at his Windsor, Ontario shop, to Parsons.

During the fall of 1983 and the winter of 1984, the appellant worked at the shop that he had rented in Romulus. Although the M-1 rifles were reassembled in the workshop during this period, the appellant claims that he was merely an employee of Parsons and was unaware of what was occurring.

On several occasions during the period in which the appellant was working in Romulus, he brought gun barrels to Chris Yeatts, the foreman of a metal cleaning company in Warren, Michigan, to have them stripped. On one occasion, in September, 1983, Yeatts and the appellant discussed the possibility of the appellant selling Yeatts an assembled M-1. Appellant claims that Yeatts raised the possibility; Yeatts testified that it was the appellant's idea. However, there is no evidence that the appellant ever personally sold an assembled M-1 in the United States.

Between December, 1983, and May, 1984, Parsons and Peter Bailey, another Australian, sold a number of assembled M-1's in the United States. On May 13, 1984, Parsons and Bailey were arrested by local police while selling M-1's from the back of a station wagon in a parking lot outside a gun show in Peoria, Illinois. The police later conducted a search of the Romulus workshop, where they found rifle frames and other rifle parts. Parsons was subsequently released on bail. While free, he fled to his native Australia.

The appellant and Parsons were subsequently charged with conspiring to import, manufacture, and deal in firearms without a license, see 18 U.S.C. §§ 371, 922 (1982). Appellant was tried and convicted. The court sentenced him to five years probation and a $5,000 fine. Appellant appeals both the conviction and the fine.

## II.

### A.

At the appellant's trial, Chris Yeatts, the foreman of the gun stripping shop, testi-

fied that the appellant had offered to sell him an assembled M–1 rifle. On cross-examination, the defense sought to impeach Yeatts' credibility by introducing evidence that Yeatts had used the hallucinogenic drug LSD. The defense's theory was that evidence of drug use is probative of credibility because individuals who use illegal drugs are engaged in "a lifestyle of crime and disrespect for law" and, therefore, are likely to have no compunction about lying under oath. The district court refused to admit evidence of Yeatts' prior drug use for this purpose. The court did, however, offer to allow the defense to introduce evidence of the effect that Yeatts' drug use might have had on his memory. The defense declined this offer, and introduced no evidence regarding Yeatts' drug use.

■ The appellant asserts that the district court erred in not allowing him to introduce evidence of Yeatts' drug use to impeach his character. We do not agree. Evidence that a witness has used illegal drugs may be probative of the witness' "possible inability to recollect and relate," *United States v. Banks,* 520 F.2d 627, 631 (7th Cir.1975). This evidence may be admitted where the memory or mental capacity of a witness is legitimately at issue. *Id.* At the same time, however, there is considerable danger that evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony. *See* Fed.R.Evid. 403. A court must, therefore, be chary in admitting such evidence when it is offered for the sole purpose of making a general character attack. *See Banks,* 520 F.2d at 632; *accord United States v. Sampol,* 636 F.2d 621, 666–67 (D.C.Cir.1980). *See generally,* Annot., *Use of Drugs as Affecting Competency or Credibility of Witness,* 65 ALR 3rd 705 (1975 & Supp.) (collecting cases). In this case, the trial court struck precisely the correct balance.

### B.

Appellant next asserts that the trial court erred by not allowing him to introduce evidence that Yeatts had been convicted by a Michigan court on a misdemeanor charge of possessing a switchblade. The court, appellant claims, was required to admit this evidence under Rule 609, because possession of a switchblade constitutes a "crime of dishonesty."[1] Although the appellant concedes that possession of a weapon is generally not considered to be a crime of dishonesty, *see, e.g., United States v. Slade,* 627 F.2d 293, 308 (D.C. Cir.), *cert. denied,* 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980) (gun possession), he suggests that possession of a switchblade is an exception to the rule. We disagree.

■ Appellant first argues that a Michigan court would characterize possession of a switchblade as a crime of dishonesty. Even if this is correct, state law characterizations of a crime as one of dishonesty are not binding on the federal courts. It is our responsibility to evaluate an offense as a matter of federal law. *See* J. Weinstein & M. Berger, 3 *Weinstein's Evidence* ¶ 609[04] at 71 (1986).

In order to determine whether to characterize a state law offense as one of dishonesty, we look to state law to identify the elements of the crime. *See* Fed.R.Evid. 609(b), advisory committee's note. Under Michigan law, the only element of the misdemeanor of possession of a switchblade is actual possession. *See* Mich.Comp.Laws Ann. § 750.226a (West 1968). Specific intent to deceive is not an element of the offense. However, the statute defines a switchblade as a weapon that "has the appearance of a pocket knife." *Id.* Appellant argues that the fact that a switchblade may not appear to be a weapon makes possession of this particular weapon a crime of dishonesty.

■ The appellant's argument misses the mark. The conference committee re-

---

**1.** Rule 609 requires a district court to admit evidence that a witness has been convicted of a crime within the preceding decade, if such evidence is offered on cross-examination for the purpose of impeaching the witness, and if the conviction was for a crime that "involved dishonesty or false statement." Fed.R.Evid. 609(a).

port on the Federal Rules of Evidence defined "crimes of dishonesty" to mean "crimes such as perjury or subrogation of perjury, false statement, criminal fraud, embezzlement, or false pretense." H.R. Conf.Rep. No. 93–1597, 93rd Cong., 2nd Sess. 9, *reprinted in* 1974 U.S.Code Cong. & Admin.News 7051, 7103. The essential characteristic of these offenses is that the witness, acting in a calculated and deliberate manner, has committed acts of falsification for the very purpose of deceiving. It is this essential characteristic that makes these crimes probative of a witness' propensity to testify truthfully. It seems clear that Chris Yeatts' decision to carry a switchblade, rather than a gun, is not probative of his propensity to lie under oath. The district court, therefore, did not err in excluding evidence concerning this conviction.

### C.

■ Appellant asserts that the district court's exclusion of the evidence concerning Chris Yeatts' drug use and Yeatts' misdemeanor conviction denied him his right to "confront the witnesses against him" as guaranteed by the Sixth Amendment. We find this claim to be without merit.

The Sixth Amendment provides a criminal defendant the right to cross-examine the prosecution's witnesses. *United States v. Thompson*, 807 F.2d 585, 589 (7th Cir.1986). However, this right is not unlimited. Trial judges have broad discretion "to impose reasonable limits on such cross-examination based on concerns about ... harassment, prejudice, confusion of issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, — U.S. —, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). In order to determine whether the restrictions placed on the right to cross-examine a witness rise to the level of a constitutional deprivation, we "look to the record as a whole ... and to the alternative means open to impeach the witness." *United States ex rel. Blackwell v. Frazen*, 688 F.2d 496, 500–01 (7th Cir.1982), *cert. denied*, 460 U.S. 1072, 103 S.Ct. 1529, 75 L.Ed.2d 950 (1983) (citations omitted). We must resolve whether the restrictions that the court imposed on the defendant's cross-examination deprived the defense of a meaningful opportunity to elicit available, relevant information that was likely to effectively impeach the credibility of the witness.

Appellant suggests that this case is similar to *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In *Davis*, the trial court refused to allow the defendant, on cross-examination, to ask a key government witness if the witness had been on probation at the time he provided information to the police that led to the arrest of the defendant. The defense sought to demonstrate that, because the witness was on probation, he had a strong motive to lie in order to divert police suspicion away from him. The defense did not try to make a general character attack. The Supreme Court reversed the conviction, holding that the trial court had violated the defendant's right to confrontation because the restrictions that it had imposed made it impossible for the defense to adequately and effectively impeach the witness.

This case is easily distinguishable from *Davis*. Unlike the evidence excluded in *Davis*, the excluded evidence in this case was intended solely to impeach the witness' character. Nothing in the excluded evidence suggested that Yeatts had any motive to lie or any bias against the defendant. Moreover, the record makes clear that appellant had ample opportunity to impeach the witness on other grounds. The defense made use of its opportunity, questioning Yeatts as to why he had not discussed the proposed rifle sale when he was questioned by an agent from the Bureau of Alcohol, Tobacco, and Firearms. We therefore conclude that the restrictions that the district court imposed did not deprive the appellant of his right to confrontation.

### III.

The appellant next claims that the district court erred by refusing to admit evi-

dence that John Parsons, the appellant's co-conspirator, fled the country. The appellant argues that he was entitled to introduce evidence about Parsons' flight because the jury would have been able to infer the appellant's innocence from the fact that, unlike his alleged co-conspirator, he did not flee. The district court rejected this evidence because it would have required inquiry into a collateral matter and because it was of little probative value. We agree with this decision.

We have previously considered whether a court may admit evidence that an accused fled to avoid prosecution. We have held that "evidence of a defendant's flight ... is admissible as evidence of consciousness of guilt and thus of guilt itself." *United States v. Lewis,* 797 F.2d 358, 368 (7th Cir.1986). However, we have also warned that because of our "doubt as to the probative value of flight evidence ... its admission ... should be regarded with caution." *United States v. Jackson,* 572 F.2d 636, 639–40 (7th Cir.1978). The probative value of flight evidence is even more limited when, as here, it concerns a party other than the accused. Admitting evidence comparing a defendant's action to that of a party not before the court would add little, while injecting unjustified complexity and delay into the trial.

### IV.

■ The appellant also asserts that the jury lacked sufficient evidence to convict him. In considering this claim, we must determine whether, when viewed in the light most favorable to the government, the evidence was sufficient to convince any rational jury, beyond a reasonable doubt, that the defendant had committed each element of the offense. *United States v. Draiman,* 784 F.2d 248, 251 (7th Cir.1986). The government introduced evidence that the appellant was experienced in the gun business, that he was repeatedly at the scene of the conspiracy, and that he had acted to further the aims of the conspiracy. This testimony was sufficient to uphold the verdict.

### V.

■ At the presentencing hearing, the government called a Special Agent from the Bureau of Alcohol, Tobacco, and Firearms as a witness. The agent testified that the conspiracy had sold approximately 2,100 rifles and that, as a result, the appellant had earned a substantial profit. This testimony was based on hearsay statements made by 35 to 40 individuals whom the government had not called at trial. The district court, relying in part on this evidence, imposed a $5,000 fine. The appellant contests the fine, arguing that the district court should have excluded this evidence. We conclude that the trial court did not exceed its discretion in considering this evidence.

■ A district court has "great latitude in determining what factors to consider when imposing sentences." *United States v. Andersson,* 803 F.2d 903, 907 (7th Cir. 1986) (citation omitted). In reaching its decision a court may consider evidence, including hearsay, that is not admissible at trial. *See, e.g., United States v. Marshall,* 719 F.2d 887, 891–92 (7th Cir.1983). Nonetheless, "the sentence may not be based on inaccurate or improper factors." *Andersson,* 803 F.2d at 907 (citation omitted). In particular, the court may not base its sentence on evidence of crimes for which the defendant has not been convicted. *United States v. Johnson,* 658 F.2d 1176, 1179 (7th Cir.1981). Moreover, because hearsay allegations are inherently suspect, we have held that the trial court must give the defendant "an opportunity to rebut hearsay evidence that he claims is erroneous," *United States v. Allen,* 797 F.2d 1395, 1401 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 196, 93 L.Ed.2d 128 (1986).

In this case, the appellant was convicted of one count of conspiracy. The hearsay evidence considered by the court did not concern a separate crime. Rather, it was admitted to show the extent and purpose of the conspiracy. The trial court gave the defendant a full opportunity to cross-examine the government witness regarding this evidence. This questioning revealed that the evidence was extremely weak; the

government agent was unable to provide names and dates for significant alleged sales. After hearing the cross-examination, the court made clear that it would give little weight to this testimony. This was a permissible use of the evidence.

## VI.

The appellant has failed to persuade us that the district court erred in any respect in conducting his trial. The decision of the district court is, therefore, AFFIRMED.