

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-14-1111

| | |
|---|---|
| ROSMAN CHANTHARATH<br>APPELLANT | **Opinion Delivered** January 20, 2016 |
| V. | APPEAL FROM THE WASHINGTON<br>COUNTY CIRCUIT COURT<br>[NO. CR 2013-1746-6] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE MARK LINDSAY,<br>JUDGE |
| | AFFIRMED |

## CLIFF HOOFMAN, Judge

Appellant Rosman Chantharath appeals from his conviction for delivery of a controlled substance (methamphetamine), for which he received a sentence of five years' imprisonment and a $10,000 fine.[1]  On appeal, Chantharath argues (1) that the circuit court abused its discretion by refusing to allow him to cross-examine a witness about a pending petition to revoke her probation and (2) that the circuit court's refusal to allow this evidence violated his right to confront the witness against him.  We affirm.

On October 14, 2013, Chantharath was charged with one count of delivery of a controlled substance (methamphetamine).  The jury trial was held on August 28, 2014.  At

---

[1] This appeal returns to us after we remanded to settle and supplement the record with the official transcription of the audio recording of the drug buy that was played for the jury at trial. *Chantharath v. State*, 2015 Ark. App. 442.  We also ordered Chantharath to file a substituted abstract, brief, and addendum incorporating the verbatim transcript. *Id*.  He has complied with this court's previous opinion, and we now address the merits of his arguments on appeal.

SLIP OPINION

trial, Detective Gene Johnson with the Springdale Police Department testified that a confidential informant (CI), Robin Delgado, participated in a controlled purchase of methamphetamine from Chantharath on July 29, 2013. Johnson stated that Delgado had previously been arrested on a shoplifting charge and that she had inquired of her arresting officers if she could "help herself out" with her charge by assisting the police. Johnson met with Delgado, had her sign a cooperating-individual agreement, and then obtained permission from the circuit court in Benton County, where Delgado had been placed on probation, to have her act as a CI.

Johnson testified that on July 29, 2013, Delgado contacted him and told him that she would be able to purchase methamphetamine from a person she referred to as "Stacks." Johnson determined that "Stacks" was Chantharath, and he showed a picture of Chantharath to Delgado, who affirmatively identified the person in the picture as "Stacks." Johnson stated that he searched Delgado and her vehicle, gave her five $20 bills with which to buy the methamphetamine, and then followed her to Chantharath's apartment. Sergeant Anthony Murphy testified that he was parked in the parking lot of the apartment building and witnessed Delgado enter and exit the apartment. Johnson testified that Delgado wore a wire and that he could also hear the entire transaction. He then followed Delgado to a predetermined location for debriefing. She turned over the wire and the methamphetamine and indicated that it was Stacks who had sold her the drugs. An audio recording of the controlled buy between Delgado and Chantharath was played for the jury and admitted into evidence.

On cross–examination, Johnson was questioned as to Delgado's motivation for acting as a CI. Johnson stated that Delgado had agreed to assist the police in order to work off some of her fines from district court due to her misdemeanor shoplifting charges. Johnson testified that he was aware that Delgado was also on active probation for felony charges because he had to get permission from the circuit court and Delgado's probation officer for her to act as a CI; however, he indicated that her assistance was only of benefit to her misdemeanor charges and did not affect her felony probation.

In her testimony at trial, Delgado again identified Chantharath as the person who had sold her the methamphetamine on July 29, 2013. She admitted that she had been previously convicted of possession of methamphetamine in Benton County and that she was currently on probation for that charge. She also admitted that she had been convicted of misdemeanor shoplifting in 2010, in addition to convictions for contempt and failure to appear in district court in 2011 after she had failed to pay her fines. Delgado indicated that she had offered to assist the police in exchange for payment of her fines and that she had picked Chantharath because he was the only person she knew that was selling drugs at that time.

Defense counsel then questioned Delgado about whether she had any pending charges against her, and the prosecution objected, arguing that evidence of any pending charges was inadmissible under Arkansas Rules of Evidence 608. The defense responded that this evidence was relevant to Delgado's bias or motive to fabricate her testimony and to her perception of what she might hope to gain by testifying favorably for the prosecution. The circuit court allowed the defense to voir dire Delgado outside the presence of the jury to

determine whether any promises had been made to her in connection with any of her pending charges.

During voir dire, Delgado admitted that she had a pending felony charge in Washington County for performing body art on a minor and that she was facing a potential revocation of her felony probation; however, she denied that she had been promised anything by the prosecution with regard to those charges. She further stated that she did not expect to receive special treatment or leniency with respect to those charges as a result of her testimony.

The defense then argued that Delgado's credibility regarding her motive to testify against Chantharath was for the jury to determine and that it would violate Chantharath's right to confrontation under the Sixth Amendment of the United States Constitution, as well as the equivalent right under the Arkansas Constitution, if he was not allowed to cross-examine Delgado about her pending charges. The circuit court inquired if the defense had any evidence that Delgado had been offered anything for her testimony in connection with her pending charges, and the defense replied that it did not. The court then ruled that the probative value of evidence of any pending charges against Delgado was slight and "that the prejudicial effect on the jury would be far more damaging and lead to a likelihood of a miscarriage of justice." The court ruled that this evidence was inadmissible, although the defense was allowed to further question Delgado regarding her agreement to act as a CI in exchange for payment of her fines on her previous convictions. The circuit court also ruled that Chantharath's constitutional rights of confrontation and due process were not violated.

The defense proffered the testimony of Christina Duncan, Delgado's probation officer, who indicated that Delgado had agreed, as one of the conditions of her probation, that she would not perform undercover work for the police. Duncan indicated that Delgado had obtained permission from the circuit court to deviate from this condition so that she could act as a CI. Duncan also testified that Delgado had violated her probation by committing new offenses, that she had submitted paperwork to have her probation revoked, and that Delgado was facing imprisonment if her probation were to be revoked. According to Duncan, when Delgado "gets desperate, she does desperate things." At the conclusion of the proffer, the circuit court reiterated its previous ruling excluding evidence as to any pending charges against Delgado.

At the conclusion of the trial, Chantharath was convicted of possession of a controlled substance (methamphetamine) and was sentenced to five years' imprisonment and a $10,000 fine. He filed a timely notice of appeal from the September 12, 2014 sentencing order.

On appeal, Chantharath first argues that the circuit court abused its discretion by refusing to allow him to cross-examine Delgado about a pending petition to revoke her probation. He contends that this evidence was relevant to the issue of whether Delgado was motivated by a fear of imprisonment to produce false evidence against Chantharath. Although he recognizes that the audio recording of the drug buy was played for the jury, Chantharath argues that none of the officers witnessed the transaction and that there was no proof that Delgado obtained methamphetamine from Chantharath. Instead, he contends that Delgado could have hidden the methamphetamine on her person, as she was not strip-searched prior

to the controlled buy. Thus, Chantharath asserts that Delgado's credibility was at issue and that the jury did not have the full picture of her possible motivation in testifying against him.

A trial court's ruling limiting the scope of cross-examination of a witness is reviewed under an abuse-of-discretion standard. *Woodruff v. State*, 313 Ark. 585, 856 S.W.2d 299 (1993). A defendant should be accorded a wide latitude in cross-examination to impeach the credibility of a witness against him. *Gilcrease v. State*, 2009 Ark. 298, 318 S.W.3d 70. Thus, it is generally permissible for a defendant to show by cross-examination anything bearing on the possible bias of the testimony of a material witness. *Id.* This rule applies to testimony given under expectation or hope of immunity or leniency. *Id.* Our supreme court has held that the test is the expectation of the witness and not the actuality of a promise. *Id.* While the right of a defendant to show the bias of a witness does not lie within the trial court's discretion, "[o]nce the main circumstances showing bias have been admitted, the trial court may impose reasonable limits on cross-examination based upon concerns about harassment, prejudice, waste of time, unnecessary duplication of testimony, confusion of issues, or interrogation that is repetitive or only marginally relevant." *Id.* at 9, 318 S.W.3d at 77 (citing *Billett v. State*, 317 Ark. 346, 877 S.W.2d 913 (1994)).

There was no abuse of discretion by the circuit court in this case in limiting the cross-examination of Delgado. Chantharath was allowed to thoroughly question Delgado about her agreement to act as a CI for the police in return for payment of her outstanding fines resulting from her shoplifting conviction. Delgado also testified without objection that she was currently on probation for felony charges. While Chantharath argues that he should have

been able to question Delgado about a pending petition to revoke her probation, there was no evidence presented that a revocation petition had actually been filed. Instead, Delgado's probation officer indicated in her proffered testimony that she had merely submitted the paperwork so that a revocation petition could potentially be filed. Furthermore, there was no evidence presented by Chantharath that an offer of leniency had been made by the prosecution with respect to any pending charges against Delgado, including a potential revocation of her probation. To the contrary, Delgado testified during voir dire that she did not have any reason to expect that she would be given special treatment or leniency in connection with her pending charges. Under these circumstances, the circuit court did not abuse its discretion in ruling that the marginal probative value of this evidence was outweighed by the danger of prejudice.

Chantharath cites to *Klimas v. State*, 259 Ark. 301, 534 S.W.2d 202 (1976), in support of his argument. However, the facts in that case are distinguishable. In *Klimas*, the prosecution objected when the defense asked Klimas's accomplice whether he was aware that the prosecutor would be asked to make a recommendation to the parole board before a convict was paroled, and the trial court sustained the objection. *Id*. On appeal, the State admitted that the ruling was erroneous, but our supreme court found that the error was harmless. *Id*.

Here, Chantharath was not denied the opportunity to question Delgado regarding her potential bias or motives for testifying. While the circuit court limited the scope of the cross-examination, it did so only after finding that there was no evidence that there was a deal

offered to Delgado and that Delgado had no expectation of leniency with regard to any of her pending charges. Thus, there was no abuse of discretion by the circuit court, and we affirm on this point.

In his second point on appeal, Chantharath contends that the circuit court's limitation of his cross-examination of Delgado violated his Sixth Amendment right to confront witnesses against him. In *Bowden v. State*, 301 Ark. 303, 308–09, 783 S.W.2d 842, 844 (1990), our supreme court stated the following with regard to cross-examination and a defendant's right of confrontation:

> The sixth amendment to the United States Constitution and Art. 2, § 10 of the Arkansas Constitution guarantee the right of an accused in a criminal prosecution to be confronted with the witnesses against him. The right of confrontation provides two types of protection for a criminal defendant: the right physically to face those who testify against him and the opportunity to conduct effective cross-examination. *Delaware v. Fensterer*, 474 U.S. 15 (1985); *Winfrey v. State*, 293 Ark. 342, 738 S.W.2d 391 (1987). *See also Miller v. State*, 269 Ark. 409, 601 S.W.2d 845 (1980). In fact, "[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673 (1986); *Davis v. Alaska*, 415 U.S. 308 (1974); *Winfrey v. State, supra*.

> However, the right to cross-examine the prosecution's witnesses is not unlimited. *United States v. Cameron*, 814 F.2d 403 (7th Cir.1987). Trial judges have wide latitude insofar as the Confrontation Clause is concerned "to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of issues, the witness['s] safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall, supra*. The Confrontation Clause "guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer, supra*; *Ohio v. Roberts*, 448 U.S. 56 (1980).

> In order to determine whether the restrictions placed on the right to cross-examine a witness rise to the level of a constitutional deprivation, a reviewing court must look "to the record as a whole" and resolve whether the restrictions that the trial court imposed on the defendant's cross-examination created a substantial danger of prejudice by depriving the defendant of a meaningful opportunity to elicit

available, relevant information that was likely to effectively impeach the credibility of the witness. *See United States v. Cameron*, *supra*; *United States ex rel. Blackwell v. Franzen*, 688 F.2d 496 (7th Cir.1982), *cert. denied*, 460 U.S. 1072 (1983). In considering whether there has been a deprivation of meaningful cross-examination in violation of the Confrontation Clause, courts have considered various factors, such as whether an effective cross-examination would have been crucial to the defense. *See United States v. Kaplan*, 832 F.2d 676 (1st Cir.1987), *cert. denied*, 485 U.S. 907 (1988).

Chantharath argues that the circuit court's ruling denying him the opportunity to question Delgado about her probationary status rose to the level of a constitutional violation, and he cites to *Davis v. Alaska*, 415 U.S. 308 (1974). In *Davis*, the defendant sought to cross-examine a prosecution witness about his status as a juvenile delinquent in order to show that the witness might have incorrectly identified the defendant in order to shift attention from himself and to avoid having his probation revoked. *Id.* The Supreme Court reversed the defendant's conviction, holding that the defendant was denied the right of effective cross-examination as guaranteed under the Sixth Amendment. *Id.*

Here, however, Chantharath was not denied the opportunity to effectively cross-examine Delgado regarding her motives for testifying. Indeed, Delgado admitted that she offered to act as a CI in order to help herself out with her fines. She also admitted that she was on probation for a felony conviction at the time of trial. The circuit court ruled that if Chantharath could offer any evidence to connect Delgado's pending charges or the potential revocation of her probation to her motivation to testify at trial, then it would allow further cross-examination on that issue. However, Delgado denied such a connection, and there was no other evidence presented by Chantharath that tied her testimony to an expectation of leniency on any pending charge. The Supreme Court has held that a trial court has wide

9

discretion insofar as the Confrontation Clause is concerned to limit cross-examination based on concerns about prejudice or interrogation that is repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673 (1986). As discussed under Chantharath's first point on appeal, the circuit court in this case found that further cross-examination of Delgado with respect to her probation and pending criminal charges was of marginal relevance and was unduly prejudicial. Thus, Chantharath was not denied the right to effectively cross-examine the witnesses against him, and he has failed to demonstrate a violation of his right of confrontation. Accordingly, we affirm on this point on appeal as well.

Affirmed.

GRUBER and WHITEAKER, JJ., agree.

*Steven R. Davis*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Evelyn D. Gomez*, Ass't Att'y Gen., for appellee.