Cite as 2019 Ark. App. 460

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR-19-141

|  |  |
|---|---|
| | **Opinion Delivered** October 16, 2019 |
| FREDDIE EZEKIEL | |
| | APPEAL FROM THE CLARK |
| | COUNTY CIRCUIT COURT |
| APPELLANT | [NO. 10CR-17-101] |
| V. | |
| | HONORABLE GREG VARDAMAN, |
| | JUDGE |
| STATE OF ARKANSAS | |
| | AFFIRMED |
| APPELLEE | |

## LARRY D. VAUGHT, Judge

Freddie Ezekiel appeals his conviction by the Clark County Circuit Court of first-degree forgery as a habitual offender. We affirm.

On July 30, 2017, Arkadelphia police responded to two separate calls from AutoZone and O'Reilly Auto Parts stores about a woman purchasing items with counterfeit currency. Tiffany Gwatney was arrested at Wal-Mart with counterfeit $100 bills in her possession. Police were able to identify Gwatney's car and locate it at McDonald's in Arkadelphia.

When the police stopped the car, Ezekiel was one of three people in the vehicle and the only passenger in the backseat. As the officers approached the car, they observed him shoving what was later revealed to be five counterfeit $100 bills into the seat cushions. On the back floorboard next to his feet were sacks containing the items purchased from AutoZone and O'Reilly Auto Parts with counterfeit $100 bills.

Officer Aaron Abbott removed Ezekiel from the car and searched him. During that search, Abbott located Ezekiel's wallet and tossed it into the back seat of the car. A different officer who was searching the backseat of the car looked in the wallet and found a credit card belonging to Ezekiel, receipts from the purchases made with counterfeit bills at AutoZone and O'Reilly Auto Parts, and currency that was less than the change from the purchases.

The State charged Ezekiel with first-degree forgery as a habitual offender. Prior to trial, he moved to suppress his wallet and its contents as the fruits of an illegal search. Ezekiel waived his right to jury trial, and the parties agreed to allow the court to consider and rule on the motion to suppress during the bench trial.

At trial, Gwatney testified for the State about the events of July 30, 2017. She stated that when she and Ezekiel arrived at each store, Ezekiel gave her the counterfeit $100 bills and told her what to purchase. After she made the purchases at AutoZone and O'Reilly Auto Parts, she gave Ezekiel the change, the receipts, and the items she had purchased. On cross-examination, Ezekiel's counsel tried to question Gwatney about purchases she allegedly made with counterfeit bills in Garland County prior to July 30, 2017. Gwatney invoked her Fifth Amendment rights in response to all the questions about the Garland County purchases, and Ezekiel moved to strike her testimony, arguing that his right to confrontation under the Sixth Amendment had been violated. The court denied the motion.

After receiving the evidence, the court denied Ezekiel's motion to suppress, found him guilty, and sentenced him to serve twenty-one years' imprisonment in the Arkansas Department of Correction. Ezekiel brings this timely appeal from his conviction and sentence.

Ezekiel's first point on appeal is that the court violated his Sixth Amendment right to confront his accuser when it denied his motion to strike Gwatney's testimony after she invoked her Fifth Amendment rights during cross-examination when his counsel asked her about previous occasions when she allegedly passed counterfeit currency without Ezekiel's help or instruction. Ordinarily "[q]uestions of constitutional interpretation, such as whether there has been a Confrontation Clause violation, are subject to de novo review." *Raquel-Dieguez v. State*, 2015 Ark. App. 626, at 5, 475 S.W.3d 585, 589. However, "whether the testimony of a witness must be stricken whe[n] . . . upon cross-examination the witness refuses to answer questions citing the Fifth Amendment privilege . . . is within the trial court's discretion." *Robertson v. State*, 298 Ark. 131, 136, 765 S.W.2d 936, 939 (1989); *see also United States v. Wilkens*, 742 F.3d 354, 360 (8th Cir. 2014) ("A trial court's decision to strike a witness's testimony after the witness's assertion of the Fifth Amendment privilege against self-incrimination is reviewed for an abuse of discretion."). "The abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration." *Holland v. State*, 2015 Ark. 341, at 7, 471 S.W.3d 179, 184.

The right to cross-examination guaranteed by the Confrontation Clause of the Sixth Amendment is not unlimited. *Chantharath v. State*, 2016 Ark. App. 35, at 8, 480 S.W.3d 223, 228. In fact, circuit courts have wide latitude to impose restrictions on cross-examination. *Id.* at 8, 480 S.W.3d at 228. The Confrontation Clause only "'guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Id.* at 8, 480 S.W.3d at 228 (quoting *Delaware v.*

3

*Fensterer*, 474 U.S. 15, 20 (1985)). A defendant's Confrontation Clause right of cross-examination can be limited and made to yield to a witness's individual right against self-incrimination. In *Davis v. Alaska*, 415 U.S. 308, 320 (1974), the United States Supreme Court noted that the circuit court has a duty to protect a witness from cross-examination that represents an attempted invasion of his or her properly invoked constitutional protection against self-incrimination. However, the testimony of a witness must be struck when the witness refuses to answer questions on cross-examination citing the Fifth Amendment privilege "if failure to answer deprives the party questioning the witness of the right to test the truth of the witness's direct testimony, as opposed to a collateral matter." *Robertson*, 298 Ark. at 136, 765 S.W.2d at 939–40 (citing *United States v. Cardillo*, 316 F.2d 606, 611 (2d Cir. 1963)). Specifically, "if the witness by invoking the privilege precludes inquiry into the *details of his direct testimony* . . . that witness's testimony should be stricken in whole or in part." *Cardillo*, 316 F.2d at 611 (emphasis supplied).

Confrontation Clause errors are subject to a harmless-error analysis. *Watson v. State*, 318 Ark. 603, 606, 887 S.W.2d 518, 519 (1994) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)). Whether a Confrontation Clause "error is harmless in a particular case depends upon several factors: the importance of the witness's testimony in the prosecution's case; whether the testimony was cumulative; the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points[;] the extent of cross-examination otherwise permitted; and, the overall strength of the prosecution's case." *Cannon v. State*, 2010 Ark. App. 698, at 8, 379 S.W.3d 561, 565. Further, in a bench trial, "the judge is presumed to have considered only competent evidence, and this presumption is overcome

4

only when there is an indication that the trial judge did give some consideration to the inadmissible evidence." *Fields v. State*, 36 Ark. App. 179, 185, 820 S.W.2d 467, 471 (1991).

Here, the State argues that Ezekiel's questions did not pertain to anything about which Gwatney had testified on direct examination and were therefore collateral matters. Ezekiel argues that the events about which he sought to ask Gwatney were not collateral because they tended to disprove assertions she made during direct examination (namely, that Ezekiel had been the ringleader of the forgery scheme and had directed her at every step). The State rejects this argument, asserting that Ezekiel has confused the concepts of "collateral to the case" with "collateral to direct examination," which is the applicable standard here. The State cites *United States v. Berrio-Londono*, 946 F.2d 158 (1st Cir. 1991) for the position that inquiry into the witness's prior criminal history is a collateral matter. Here, however, the prior criminal acts about which Ezekiel sought to question Gwatney were arguably related to the acts about which Gwatney testified on direct.

In the present case, our standard of review requires us to affirm the court's decision unless it was an abuse of discretion, and we do not conclude that the court acted thoughtlessly or improvidently in determining that Ezekiel's questions were collateral to Gwatney's direct testimony. Moreover, we conclude that any potential error was clearly harmless. The State introduced overwhelming evidence of Ezekiel's guilt—he was observed stuffing the counterfeit money into the backseat cushions, the items purchased with counterfeit money were at his feet, and he had the receipts for, and change from, those purchases in his wallet. Beyond that, Ezekiel introduced into evidence the Garland County convictions about which he wished to question Gwatney. These documents included the factual background necessary

5

for him to make his argument that Gwatney, not Ezekiel, was the ringleader of the forgery scheme. Finally, the court stated that it did not find Gwatney credible and did not consider "much of anything Ms. Gwatney said" in reaching its verdict. We therefore affirm the court's denial of Ezekiel's motion to strike Gwatney's testimony.

Ezekiel's second point on appeal is a challenge to the court's denial of his motion to suppress his wallet and its contents. In reviewing the denial of a motion to suppress, Arkansas appellate courts conduct a de novo review based on the totality of the circumstances, reviewing findings of fact for clear error and determining whether the facts give rise to probable cause, giving due weight to inferences drawn by the circuit court. *Brazwell v. State*, 354 Ark. 281, 284, 119 S.W.3d 499, 500 (2003). "Consistent with this standard, this court defers to the superior position of the circuit court to determine the credibility of witnesses and to resolve evidentiary conflicts, but resolves legal questions through an independent determination on the totality of the circumstances." *Collins v. State*, 2014 Ark. App. 574, at 4, 446 S.W.3d 199, 203. "In addition, this court may affirm an order denying a suppression motion for a reason different from that relied upon by the court below." *Id.*

An officer making a lawful arrest may conduct a warrantless search of the accused and his property. *Stewart v. State*, 2010 Ark. App. 9, at 7, 373 S.W.3d 387, 391; Ark. R. Crim. P. 12.1(d) (2019). "A search is valid as incident to a lawful arrest even if it is conducted before the arrest, provided that the arrest and search are substantially contemporaneous and that there was probable cause to arrest prior to the search." *Brunson v. State*, 327 Ark. 567, 572, 940 S.W.2d 440, 442 (1997). A warrantless arrest is permissible when an officer has probable cause to believe that the person has committed a felony or any violation of the law in the officer's

6

presence. Ark. R. Crim. P. 4.1(a)(i)(iii). "Probable cause to arrest is defined as a reasonable ground for suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that a crime has been committed by the person suspected." *Moody v. State*, 2014 Ark. App. 618, at 4, 446 S.W.3d 652, 654 (internal quotations omitted). Probable cause to arrest does not require proof necessary to support a conviction. *Id.* "[I]n assessing the existence of probable cause, the appellate court's review is liberal rather than strict." *Id.* This court looks at the facts within the "arresting officer's knowledge—not his stated reasoning—to determine whether those facts are sufficient to permit a person of reasonable caution to believe that an offense has been committed." *Id.* In fact, an arrest may be valid even if the officer did not believe he could make an arrest; the issue of probable cause is for the appellate court to determine. *See Banks v. State*, 2010 Ark. App. 383, at 5. "Moreover, probable cause to arrest without a warrant may be evaluated on the basis of the collective information of the police," not just the information known by an individual officer. *Moody*, 2014 Ark. App. 618, at 4, 446 S.W.3d at 654.

Here, the circuit court did not err in denying Ezekiel's motion to suppress his wallet and its contents. The State correctly argued that the wallet was discovered pursuant to a proper search incident to arrest. An officer making a lawful arrest may conduct a warrantless search of the accused and his property, and that search is valid even if it is conducted before the arrest, as long as the arrest and search are substantially contemporaneous and there was probable cause to arrest prior to the search. *Brunson*, 327 Ark. at 572, 940 S.W.2d at 442. The officer who removed Ezekiel's wallet and the officer who subsequently opened it and discovered its contents clearly had probable cause to believe Ezekiel had committed felony

forgery. They had just seen Ezekiel stuff counterfeit bills into the car's cushions, and they found the items purchased with counterfeit currency at his feet in the car. Ezekiel was located in the car that had been identified as Gwatney's after she had been picked up with counterfeit bills in her possession. Based on those facts, the officers had probable cause to arrest Ezekiel even before discovering the contents of his wallet, and the court correctly found that the arrest occurred very shortly after the search. As such, we affirm the denial of Ezekiel's motion to suppress his wallet and its contents because the evidence was legally discovered as part of a valid search incident to arrest.

Affirmed.

VIRDEN and SWITZER, JJ., agree.

*Short Law Firm*, by: *Lee D. Short*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.