UNITED STATES of America, Plaintiff–Appellee,

v.

Margaret NEELY, Forest Bailey, Steve Johnson, Cornell Stokes, and Ben Israel, Defendants–Appellants.

Nos. 88–1387, 88–1402, 88–2574, 88–2603, 88–2799, 88–2800 and 88–2906.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 16, 1992.

Decided Nov. 18, 1992.

Mark D. Pollack, Alan Grossman and Anton R. Valukas, Asst. U.S. Attys., Office of the U.S. Atty., Criminal Div., David Stetler and Victoria J. Peters, Asst. U.S. Attys., James R. Ferguson, Jonathan C. Bunge (argued), Office of the U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for U.S.

William H. Theis, Chicago, Ill., argued for Margaret Neely.

William H. Theis (argued), Gerald J. Collins, Chicago, Ill., for Ben Israel.

Paul M. Brayman, Chicago, Ill., argued for Forest Bailey.

Lewis Myers, Jr., Paul M. Brayman (argued), Chicago, Ill., for Steve Johnson.

Thomas Peters, Chicago, Ill., argued for Cornell Stokes.

Before BAUER, Chief Judge, EASTERBROOK, Circuit Judge, and WOOD, Jr., Senior Circuit Judge.

BAUER, Chief Judge.

In a forty-eight count indictment, twenty-six people were charged with mail fraud, racketeering, and conspiracy as a result of their association with a scheme involving staged automobile accidents, padded medical bills, and fraudulent insurance claims. After an eleven-week trial, the jury convicted the defendants in this consolidated appeal, Forest Bailey, Ben Israel, Steve Johnson, Margaret Neely, and Cornell Stokes, of substantially all the counts with which they were charged. We find no merit in their challenges to these convictions, and affirm them in all respects.

## I.

The defendants were indicted in connection with a conspiracy to defraud insurance companies by staging automobile accidents. Insurance agent Forest Bailey, working with two other agents who do not raise claims on appeal, obtained multiple automobile insurance policies for Larry Lake and Walter McCullins. Lake and McCullins, as well as Steve Johnson and Carl Langley, drove in the staged accidents. After securing insurance, Bailey, the drivers, and former alderman Perry Hutchinson arranged staged accidents. Ben Israel, Steve Johnson, Margaret Neely, and Cornell Stokes were volunteer "victims." The drivers pretended to strike the victims (or struck them at very low speed), the victims fell to the ground screaming for an ambulance. The victims then feigned injury (hard-to-diagnose back and neck injuries were the most common complaints) and were taken to the hospital. After they were discharged from the hospital, the victims visited another conspirator, Dr. Aaron Long. Long submitted fraudulent bills for unnecessary medical treatment to the drivers' insurance companies. Another conspirator, Nolan Harrison, verified false wage-loss claims for the victims, which were submitted for payment. Patrick McClurkin, an attorney, negotiated with the insurance companies on behalf of the victims.

The participants divided the spoils of the seventeen staged accidents. After several years, the scheme began to sour. In the fall of 1985 Lake was subpoenaed by a federal grand jury. He went to see Bailey, and after they discussed the subpoena, he agreed to go to Belize indefinitely. Long, McClurkin, and Hutchinson gave Lake $3,400 for his trip. Tr. at 4542. Lake left in November 1985 and, though he received another $1,500 from Bailey, he returned to Chicago on December 30, 1985. Lake was

afraid to tell his co-conspirators of his return, Tr. at 4549, but Steve Johnson saw him in traffic one day in January 1986.

Lake realized that Johnson had seen him, and wrote four virtually identical letters which detailed the fraud scheme and pinned responsibility for it on Bailey. Lake hoped that the letters would protect him from Bailey and others who might be willing to take drastic steps to protect themselves. He eventually sent one of the letters to the United States Attorney's Office for the Northern District of Illinois; he sent another to Forest Bailey. The two remaining letters he placed in safe deposit boxes. Bailey, after consulting with Hutchinson, Long, and McClurkin, responded to the letter protesting his innocence. Lake cooperated with the government and testified before the grand jury. He pleaded guilty to one count of mail fraud and one count of conspiracy.

Count one of the forty-eight count superseding indictment charged Bailey, McClurkin, Long, Harrison, and Hutchinson with conspiracy to commit mail fraud. Counts two through thirty-five charged the various defendants with substantive mail fraud. Count thirty-six charged Bailey and Hutchinson with racketeering; counts thirty-seven and thirty-eight charged the pair with conspiracy to obstruct justice and with obstruction of justice. The remaining counts charged various defendants with perjury to the grand jury, conspiracy to evade income taxation, and filing false tax returns.

## II.

*Forest Bailey*

Bailey was convicted on all counts with which he was charged: three counts of conspiracy in violation of 18 U.S.C. § 371, thirty-four counts of mail fraud in violation of 18 U.S.C. § 1341, one count of racketeering in violation of 18 U.S.C. § 1962(c), one count of obstruction of justice in violation of 18 U.S.C. § 1503, and two counts of filing false tax returns in violation of 26 U.S.C. § 7206(1). Bailey was sentenced to fourteen years in prison, followed by five years on probation. Bailey argues that he is entitled to a new trial because of three allegedly erroneous evidentiary rulings by the district court. We shall consider each challenge in turn.

■ Bailey and Steve Johnson (one of the drivers) submitted a joint brief, but we shall examine their claims under Federal Rule of Evidence 404(b) separately. Bailey asserts that the district court should not have admitted evidence that he was involved in another insurance fraud scheme. The government presented evidence that Bailey orchestrated another automobile insurance fraud scheme at the same time he was participating in the staged-accident scam. Bailey arranged for cars to be stripped and crushed, and then reported them stolen to insurance companies. The district court admitted this evidence under Federal Rule of Evidence 404(b). Rule 404(b) provides that evidence of other acts is not admissible to show that the defendant has a bad character and that he acted consistently with that character. *United States v. Harvey*, 959 F.2d 1371, 1373–74 (7th Cir.1992). Evidence of other acts may be admitted however, to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). The government presented the "other acts" evidence to establish Bailey's intent or state of mind. The judge gave the jury a cautionary instruction directing it to limit its consideration of the second scheme to Bailey's intent. *See, e.g.,* Tr. at 4431, 5119.

Larry Lake testified that Bailey directed him to purchase expensive cars for Bailey. Tr. at 4432. Lake stripped the cars, Bailey filed insurance claims for the damage, and then Lake reassembled the cars. Tr. at 4432, 4437. Bailey also ordered Lake to destroy three cars, and filed claims for theft. *Id.* at 4432. Lake testified that Bailey also had him strip and scrap other people's cars. Tr. at 4490–92. Aaron Long testified that Bailey arranged for Long to submit a false repair claim on Long's car, and then had the car towed and crushed so Long could submit a false theft claim too. Tr. at 5616–23. Marshall Wade (Tr. at 5120–24) and Norman Cross (Tr. at 2159–

66) testified that Bailey made similar arrangements for them.

We review a district court's decision to admit Rule 404(b) evidence (as we do other evidentiary rulings), for an abuse of discretion. *United States v. Torres*, 977 F.2d 321 (7th Cir.1992); *United States v. Whalen*, 940 F.2d 1027, 1032 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 403, 116 L.Ed.2d 352 (1991).

In order to admit evidence under Rule 404(b), the district court must find that: (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value is not substantially outweighed by the danger of unfair prejudice.

*Id. See United States v. Lennartz*, 948 F.2d 363, 366 (7th Cir.1991); *United States v. Zapata*, 871 F.2d 616, 620 (7th Cir.1989) (citing *United States v. Shackleford*, 738 F.2d 776, 779 (7th Cir.1984)). Bailey's claims center on the fourth prong of the test. He contends that the district court abused its discretion "because it mechanically admitted the evidence without considering [its] prejudicial effect...." Bailey Brief at 12. Further, Bailey contends that because "[t]here was more than ample direct evidence establishing ... specific intent ...," intent was not an issue, and the government did not need to present the 404(b) evidence. Bailey Brief at 13. Bailey overlooks the federal rule that " 'a simple plea of not guilty ... puts the prosecution to its proof as to all elements of the crime charged.' " *Estelle v. McGuire*, —— U.S. ——, ——, 112 S.Ct. 475, 481, 116 L.Ed.2d 385 (1991) (quoting *Mathews v. United States*, 485 U.S. 58, 64–65, 108 S.Ct. 883, 887, 99 L.Ed.2d 54 (1988)). Mail fraud is a specific intent crime, *Lennartz*, 948 F.2d at

366, and "the prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense." *McGuire*, —— U.S. ——, 112 S.Ct. at 481.

The district court did not mechanically admit the evidence. It found that the government provided clear and convincing evidence that there was a second scheme, and that the four-prong 404(b) test was satisfied. Tr. at 4135–36.[1] It found that the evidence was

highly probative of Bailey's intent because Bailey's involvement in the submission of false stolen-car claims occurred at the same time he allegedly participated in the fake-accident scheme and because both schemes involved defrauding insurance companies through the fabrication of evidence used to support claims on policies.

Memorandum Opinion and Order, R. Doc. 491 at 36. The court also found that any prejudice caused by the admission of the evidence could be cured by a limiting instruction.

The district court's painstaking analysis refutes Bailey's contentions on appeal. It considered the substantial similarities of the two schemes and explained its reasoning to the parties. The court also expressly considered the potential prejudice to Bailey and advised him that it would minimize the risk by giving limiting instructions to the jury. *See* Tr. at 10822 (limiting instruction in jury charge). We have approved the use of evidence of similar schemes to show intent, planning, and means of operation. *See, e.g., United States v. Robinson*, 956 F.2d 1388, 1396 (7th Cir.1992), *petition for cert. filed* 61 U.S.L.W. 3083 (July 23, 1992) (No. 92–184); *United States v. Liefer*, 778 F.2d 1236, 1252 (7th Cir.1985). We agree with the district court's analysis and believe its limiting instructions were effective. *Robinson*, 956 F.2d at 1396 (discussing limitation of prejudicial impact of 404(b)

---

1. The clear and convincing standard announced in *United States v. Shackleford*, 738 F.2d 776, 779 (7th Cir.1984), has since been overruled. *See Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988); *United States v. Powers*, 978 F.2d 354 (7th Cir.1992); *United States v. Zapata*, 871 F.2d 616, 620 (7th Cir.1989).

evidence through jury instruction). *Cf. United States v. L'Allier,* 838 F.2d 234, 242 (7th Cir.1988) ("Our theory of trial relies upon the ability of a jury to follow instructions."). The district court did not abuse its discretion.

■ Bailey and Johnson also contend that the district court's limitation of their cross examination of Dr. Aaron Long violated their Sixth Amendment rights. Long was arrested for possession of ninety pounds of marijuana on July 12, 1981. There was also evidence that Long sold marijuana in 1980 and 1981. Bailey and Johnson contend that the district court's order restricting their cross examination of Long regarding the facts surrounding his arrest and drug sales violated their Sixth Amendment right to confront witnesses. They argue that to effectively present their theory of defense—that Long was the architect of the scheme because he was in desperate financial straits—they were entitled to show that "because Long was in deep ... debt ... he would *do anything* to get the money he needed—including selling marijuana...." Bailey & Johnson Brief at 16 (emphasis in original). Without the details of the possession charge, they argue, "you take all the stink out of it" and "make him look like he's a saint." *Id.* (quoting Tr. 5305–06).

■ First, the purpose of admitting prior arrests or convictions is not to show that the witness is a bad person or a "non-saint," but to impeach his credibility. Fed. R.Evid. 404(b), 609(a). Evidence of prior convictions is not admissible (using the defendants' imagery) to "stink up" a witness' character. Instead, prior arrests or convictions are admissible to shed light on the witness' credibility. Thus we reject the defendants' contention that the district court improperly sanitized Long's prior arrest.

The Confrontation Clause provides that "in all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The Sixth Amendment protects the defendant's right to cross examination and face to face confrontation at trial. *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980); *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970) (Cross examination is "the greatest legal engine ever invented for the discovery of truth."); *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965); *Sahagian v. Murphy,* 871 F.2d 714, 715 (7th Cir.1989). But it "is well established that the Sixth Amendment only guarantees the defendant the opportunity for effective, not limitless cross examination." *United States v. Muhammad,* 928 F.2d 1461, 1466–67 (7th Cir. 1991) (explaining that cross examination has no natural limits and district court must set limits based upon its evaluation of particular circumstances). "Limitations on cross examination do not interfere with the defendant's Sixth Amendment rights provided that cross examination was sufficient 'to enable a jury to evaluate the defendant's theory of defense and to make a discriminating appraisal of the witness's motives and bias.'" *Muhammad,* 928 F.2d at 1467.

We review a trial court's limitation of cross examination for an abuse of discretion. *United States v. Saunders,* 973 F.2d 1354 (1992); *Robinson,* 956 F.2d at 1397. In fact, "because the management of cross examination is peculiarly committed to the district court's discretion, the effect is to confine the matter largely to the trial level and to remove it from the area of profitable appellate review." *United States v. Burrell,* 963 F.2d 976, 997–998 (7th Cir.), *cert. denied sub nom., Henry v. United States,* — U.S. —, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992). *Accord United States v. Torres,* 965 F.2d 303, 310 (7th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 237, 121 L.Ed.2d 172 (1992). Nevertheless, if the court's ruling implicates the defendant's constitutional rights, we review it *de novo. Saunders,* 973 F.2d at 1354. Thus, "courts have striven to distinguish between the core values of the confrontation right and more peripheral concerns which remain within the ambit of the trial judge's discretion." *Dorsey v. Parke,* 872 F.2d 163, 166 (6th Cir.), *cert. denied,* 493 U.S. 831, 110

S.Ct. 103, 107 L.Ed.2d 67 (1989) (cited in *Saunders*, 973 F.2d at 1354).

We believe Bailey and Johnson's challenges fall within the latter category. Our cases have explained that " 'evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness's testimony.' " *Robinson*, 956 F.2d at 1397 (quoting *United States v. Cameron*, 814 F.2d 403, 405 (7th Cir.1987)). Further, a "district court may bar cross examination about a witness' illegal drug use when it is used 'for the sole purpose of making a general character attack.' " *Id.* (quoting *Cameron*, 814 F.2d at 405). In *Robinson*, the defendants wished to cross examine government witnesses (cooperating co-conspirators) about their past drug use. 956 F.2d at 1397. The court allowed questioning on one witness' blackouts and memory loss from past alcohol use, but refused to allow broader generalized questioning on drug use. *Id.* The defendants argued that they should have been allowed to impeach the witnesses' character and credibility with the past drug use. Based on the facts in the case, we concluded that the defendants were simply trying to suggest to the jury that people who have used drugs are more likely to tell lies. *Id.* "This is precisely the type of character attack that [our cases] forbid." *Id.* at 1398.

Further, the cases the defendants cite are readily distinguishable from the facts presented here. In *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), the Court considered the proper scope of cross examination of a government witness on the witness' bias. One government witness' charges in an unrelated case were dropped in exchange for the witness' cooperation with the government. *Id.* at 676, 106 S.Ct. at 1433. The trial court barred all cross examination on the agreement. The Court held that the defendant was entitled to cross examine on the point because exposing "a witness' motivation in testifying is a proper and important function of ... cross examination," but that the error was harmless. *Id.* at 678–79, 106 S.Ct. at 1435.

In this case, however, the defendants raise no allegation of bias. They seek to cross examine on a highly prejudicial, collateral matter to show that the witness needed money. Indeed, the *Van Arsdall* Court explained that trial judges "retain wide latitude" to impose reasonable limits on cross examination based on concerns about "harassment, prejudice, confusion of the issues, ... or interrogation that is ... only marginally relevant." *Id.* at 679, 106 S.Ct. at 1435. The Court stressed that "the Confrontation Clause guarantees an *opportunity* for effective cross examination, not cross examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985)) (emphasis in original).

The error the Court found in *Van Arsdall* was the lack of any questioning about the witness' agreement with the government. Similarly, in the other case defendants rely upon, *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1973), the defendant was not permitted to probe the possible bias created by the witness' being on probation. *Id.* at 309, 94 S.Ct. at 1107. Because the "accuracy and truthfulness of [the witness'] testimony were key elements of the State's case," the Court found the defendant was entitled to explore the possibility that the witness faced "undue pressure because of [his] vulnerable status as a probationer...." *Id.* at 317–18, 94 S.Ct. at 1111. The district court in this case did permit questioning about the prior conduct, but it did not permit the detail-oriented probing the defendants desired. Bailey and Johnson claim they needed to cross examine Long about the amount of marijuana he possessed when he was arrested to establish a necessary element of their theory of defense—that he was so desperate for cash that he would have done anything, and that he was the architect of the accident scheme. Upon closer examination, however, it appears that they were in fact pursuing a strategy similar to that of the *Robinson* defendants: if Long was selling large quantities of illicit drugs, then his truthfulness is inherently

suspect. The district court allowed Bailey and Johnson to cross examine Long about his strained finances. Tr. at 6300–01. They were also allowed to bring out that he was arrested on a felony charge which carries a relatively hefty jail sentence. Tr. 6438. The court also allowed full examination about Long's post-arrest perjury—after he was arrested, he lied under oath and gave police a false name. Tr. at 6022–25, 6301–02, 6437–41. This cross examination allowed them to pursue their theory of defense, but prevented them from injecting needlessly prejudicial information. We find no infringement on the defendants confrontation rights nor an abuse of discretion.

■ Bailey also challenges the district court's determination that the letter he wrote in response to Lake's "protection" letter was inadmissible hearsay. R.Doc. 876. In his letter Lake explained that he was afraid for his life, and then detailed the accident and car-crushing schemes including Bailey's organizational role. Lake Letter, Bailey & Johnson Brief, Appendix at 7; Tr. at 4562–67. The government introduced Lake's letter during its case in chief to support the obstruction of justice charges against Bailey. Tr. at 4558–67. The district court granted the government's motion in limine to bar Bailey's admission of his letter responding to Lake. Two and one-half weeks after he received Lake's letter, Bailey wrote to Lake disclaiming any involvement in either scheme. Bailey's letter was notarized and witnessed by three people. Bailey argues first that his letter is not hearsay because it was not offered for the truth of the matters asserted. Bailey asserts that the letter was offered to show his state of mind at the time the letter was written. Alternatively, he argues that even if the letter is hearsay, it falls into the exception for the declarant's then existing state of mind. Fed.R.Evid. 803(3).

The government contends that Bailey has waived his first theory—that the letter is not hearsay—because he failed to make the argument below. Tr. at 8712–13, 8754–62. We have reviewed the record, and

agree that Bailey did not raise this argument below and has waived it. "To preserve an issue for appellate review, a party must alert the district court and the opposing party to the specific grounds for the party's argument or objection. The specific premise for reversing an evidentiary ruling on appeal must be the same premise as that declared properly during trial." *United-ed States v. Lewis,* 954 F.2d 1386, 1391 (7th Cir.1992).

Because Bailey did not argue at trial that his letter was not hearsay, we cannot consider that argument absent plain error. *United States v. Navarez,* 954 F.2d 1375, 1380 (7th Cir.1992); *United States v. Gill,* 909 F.2d 274, 277 (7th Cir.1990). "Plain error requires 'a miscarriage of justice' which 'implies the conviction of one who but for the error would have been acquitted.'" *United States v. Fuesting,* 845 F.2d 664, 670 (7th Cir.1988) (quoting *United-ed States v. Smith,* 869 F.2d 348, 356 (7th Cir.1989)).

We find no plain error here. Bailey's argument that he wanted to admit the letter to show his state of mind is a trifle disingenuous. In his two-page epistle, Bailey denies his guilt and accuses Lake of being a gun-toting, drug-using car thief who threatened his life and burned his building. We are reminded of the district court's comments in *United States v. Burrell,* 963 F.2d 976, 998 (7th Cir.1992). In that case, one defendant tried to admit his codefendant's exculpatory statements to show that an FBI agent had heard them. The district court refused to credit this argument:

> Overruled. I mean, I have white hair now, and don't kid me. What you want to do is prof [sic] that prior statement for the truth of the matter in it by this means, and you're not going to get to do it in that way.

*Burrell,* 963 F.2d at 988. We cannot find that the district court's failure to admit the letter as non-hearsay was plain error.

■ We turn to Bailey's remaining argument, that his letter was admissible under Federal Rule of Evidence 803(3). Again, we review the trial court's refusal to admit

the letter for an abuse of discretion. Rule 803(3) is an extension, or specialized application of the present sense impression exception, which in turn is "based upon the theory that substantial contemporaneity of the event and statement negate the likelihood of deliberate or conscious misrepresentation." *United States v. Jackson*, 780 F.2d 1305, 1315 (7th Cir.1986). Three requirements must be satisfied for a statement to be admissible under the state of mind exception to the hearsay rule: (1) the statement must be contemporaneous with the mental state sought to be proven; (2) it must be shown that declarant had no time to reflect, that is, no time to fabricate or misrepresent his thoughts; and (3) the declarant's state of mind must be relevant to an issue in the case. *United States v. Carter*, 910 F.2d 1524, 1530 (7th Cir.1990) (citing *United States v. Jackson*, 780 F.2d 1305, 1315 (7th Cir.1986)), *cert. denied,* — U.S. ——, 111 S.Ct. 1628, 113 L.Ed.2d 724 (1991).

■ Bailey wrote his letter more than two weeks after he received Lake's letter. This time lag defeats the letter's admission under Rule 803(3). Two and a half weeks is more than adequate time to reflect (and perhaps fabricate) one's thoughts. Bailey's careful consideration of the contents of the letter is highlighted by his use of witness and notary signatures. In *Carter*, we found it was proper to exclude a statement of the declarant's state of mind made only one hour after the event (his confession) to which the statement pertained. 910 F.2d at 1530–31. Moreover, we have also noted that "[t]he act of letter writing usually provides as much time as the writer might want to fabricate or misrepresent his thoughts" so the 803(3) exception generally does not apply. *United States v. Harris*, 942 F.2d 1125, 1130 n. 5 (7th Cir.1991). *But see Mutual Life Insurance Co. v. Hillmon*, 145 U.S. 285, 295–96, 12 S.Ct. 909, 912–13, 36 L.Ed. 706 (1892). In *Harris*, we held that love letters to the defendant in a tax case should be admitted as non-hearsay to show the donative intent of the individual who gave the defendant money. *Id.* In *Jackson*, the case relied upon by the district court, the statements the

defendants sought to introduce were made, like the ones here, after the defendants knew of a pending investigation and contained self-serving denials of involvement in the criminal scheme. 780 F.2d at 1313–15. The district court found that Bailey made the self-serving statements in his letter after he had time to consider them, and with an eye toward the pending investigation. Tr. at 8759. The basis for the exception, that the statements have probative value because the declarant has no chance to reflect upon (and perhaps misrepresent) his thoughts is lacking here as it was in *Jackson* and *Carter*. We believe the district court properly refused to admit Bailey's letter, and hence find no abuse of discretion.

## Ben Israel

Israel was convicted of four counts of substantive mail fraud in violation of 18 U.S.C. § 1341. Israel was sentenced to three months of work release and five years probation with restitution to Allstate Insurance Company. Israel was a victim in an accident on October 30, 1982 in which Margaret Neely was also a victim, and Carl Langley was the driver. On appeal, Israel argues that the government's closing argument compromised his right to a fair trial. He also contends that there was insufficient evidence to support his conviction. We consider each claim in turn.

Israel contends that the prosecutor's closing argument unfairly compared his accident to the other defendants' accidents, and improperly invited the jury to consider evidence of his co-defendants' accidents against him. The district court instructed the prosecutor to argue Israel's case separately. Tr. at 10214–216. We will not lightly overturn a criminal conviction "on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1984). Thus, our analysis proceeds in two steps. First, we examine whether the

prosecutor's comment was improper; if it was, then we evaluate the remark in light of the entire trial and determine whether it deprived the defendant of a fair trial. *United States v. Gonzalez*, 933 F.2d 417, 430 (7th Cir.1991) (citing *United States v. Spivey*, 859 F.2d 461, 465 (7th Cir.1988)). In *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), the Court provided several factors to guide our inquiry: (a) the nature and seriousness of the prosecutor's misconduct; (b) whether the prosecutor's statements were invited by impermissible conduct of defense counsel; (c) whether the trial court instructed the jury to disregard the statements; (d) whether the defense was able to counter the improper arguments through rebuttal; and (e) the weight of the evidence against the defendant. *Darden*, 477 U.S. at 180–82, 106 S.Ct. at 2471–72; *United States v. Pirovolos*, 844 F.2d 415, 426 (7th Cir.), *cert. denied*, 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988). Israel is entitled to a new trial only if the government's comments were improper ones that prejudiced his right to a fair trial. *United States v. Stillwell*, 900 F.2d 1104, 1112 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 111, 112 L.Ed.2d 81 (1990).

Notwithstanding Israel's arguments on appeal, counsel did not object to all of the comments Israel complains of here. To preserve an issue for appellate review, counsel must make a timely objection at trial and state the correct grounds for the objection. "In the absence of a proper objection, the court's ruling may only be reversed if a plain error was committed." *United States v. Martinez*, 937 F.2d 299, 310 (7th Cir.1991) (citing *United States v. White*, 903 F.2d 457, 466 (7th Cir.1990)). Because we review alleged misconduct within the context of the whole trial, we shall consider the prosecutor's comments as they occurred chronologically. Also, we first examine the evidence against Israel; one factor in our analysis of prosecutorial misconduct is the strength of the evidence against the defendant. *Young*, 470 U.S. at 19, 105 S.Ct. at 1048.

We believe the evidence of guilt is strong in this case. An eyewitness testified that Israel was never touched by the car that allegedly hit him. Tr. at 8051. The physician who treated Israel in the hospital (Dr. Chand) testified that there was no conclusive evidence of injury. Tr. at 9935, 9946, 9952–53. Aaron Long testified that Patrick McClurkin, Israel's brother, told Long that Israel was going to be in an accident a week before it occurred, and asked Long to look out for him. Tr. at 5453. After his accident, Israel visited Long's office and stated on a form that McClurkin had referred him to Long. Tr. at 5455. Chand sent medical reports to McClurkin. Tr. at 9948–49. Israel never complained to Chand of back or neck pain, but Long testified that Israel asked him to treat back and neck injuries. Tr. at 5456. Long's medical bills included these treatments. Moreover, the claims adjuster who investigated Israel's claim testified that Israel submitted a claim for lost wages totalling $2430. Tr. at 7187. In his claim form, Israel stated that he worked for Photo Promotions Associates. Tr. at 7192. But in his tax return for that year, Israel did not attach a W–2 from Photo Promotions, tr. at 8494–96, and the W–2s he attached totalled the amount of reported income for that year. Tr. at 7496. The eyewitness testimony coupled with the other inconsistencies in Israel's accident claim provides strong evidence that Israel knowingly participated in a staged accident.

■ Turning to Israel's objections to the prosecutor's closing argument, counsel objected when the prosecutor explained to the jury that each accident followed a general pattern: "And you see the same pattern. Hutchinson, Bailey time and again. The insurance files reflected … that virtually every one of the claimants involved in these 17 accidents was treated by the same doctor, Aaron Long. The vast majority are represented by the same lawyer, Patrick McClurkin." Tr. at 10325. Israel contends that this comment invited the jury to conclude that because his accident resembled the other accidents, he must be guilty too. After counsel objected, the court asked the prosecutor to clarify his position. The prosecutor stated:

Ladies and gentlemen, I'm referring generally to the evidence, what the documents in all of the insurance files show with respect to the overall operation of the entire scheme.... Now my comments are limited in a general manner to [the] overall nature of the evidence elicited with respect to the entire scheme.

Tr. at 10325. Defense counsel continued to object, and the court excused the jury for lunch. After the break, the court instructed the jury: "this portion of [the prosecutor's] argument is only to be admissible as to all the defendants except Neely and Israel. When [the prosecutor] deals with the evidence concerning those defendants he'll specify that separately. But this evidence that he's discussing now relates to the other seven defendants in the case." Tr. at 10339.

We do not believe that the prosecutor's comment was improper. It was general and provided the jury with the "big picture" of the case. Israel was not mentioned. Further, the district court's instruction cured any possible confusion arising from the prosecutor's argument about the over-arching scheme.

■ Israel contends that "the damage had already been done" because the jury had lunch before the court gave its instruction. Israel Br. at 10. We disagree. The exchange of clarifying instructions occurred early in the government's closing, and the instruction was not a new one. Throughout trial the jury was instructed to distinguish between evidence against Neely and Israel and evidence against the other defendants. See, e.g., Tr. at 843, 993, 1011, 1085. Further, the court explained to the jury that when it sustained an objection the jury should ignore the comment or question, and that if a witness answered before the court sustained an objection, that the jury should totally disregard the answer. Tr. at 648, R.Doc. 930, Instruction 6, Instruction 22, Instruction 27.

These ongoing instructions, together with the court's supplemental instruction during argument minimized the risk that the jury would misconstrue the evidence against Israel. They made it clear to the jury that unless the prosecutor referred to them separately, his argument did not apply to Neely and Israel. After closing argument, the court also instructed the jury that "When deliberating over the charges of mail fraud against defendants Ben Israel and Margaret Neely, you may not consider any evidence that the court has instructed you to disregard." Tr. at 10215, R.Doc. 930, Instruction 47. Israel's counsel approved the instruction. Tr. at 10216. "Our theory of trial relies upon the ability of a jury to follow instructions." *L'Allier*, 838 F.2d at 242 (quoting *United States v. Percival*, 756 F.2d 600, 610 (7th Cir.1985)). Because we do not believe the remark was improper, and because we find the district court did an admirable job instructing the jury, we cannot conclude that this comment deprived Israel of a fair trial.

■ Israel complains that the government improperly argued that in each accident, the victim tried to "dupe" the paramedics and hospital staff who treated them. See Tr. at 10423. Yet the prosecutor made this point when he was discussing defendants other than Neely and Israel. We believe the argument was proper and that the court's limiting instructions minimized any risk of prejudice to Israel from this argument. Israel's argument is reminiscent of the one raised in *United States v. Weaver*, 882 F.2d 1128, 1142–43 (7th Cir.), *cert. denied sub nom., Schmanke v. United States*, 493 U.S. 968, 110 S.Ct. 415, 107 L.Ed.2d 380 (1989). *Weaver* involved the appeals of five defendants convicted of altering and cashing postal money orders. In the course of the scheme, several defendants wrote incriminating letters. One of them, Frank Baker, pleaded guilty and testified at trial. The prosecutor argued:

Baker ... told the defense attorney on cross that he didn't have to incriminate himself. That the letters incriminated him. Just like those letters incriminate Susan Glover [a co-defendant] and just like the letters that Frank Baker drafted in June of '82 incriminate Mr. Weaver.

*Id.* at 1142. Defendant Schmanke argued that this was improper. We were somewhat puzzled, because like Israel's position

here, the prosecutor did not mention Schmanke in this portion of his argument. *Id.* at 1143. The district court rejected Schmanke's argument that the prosecutor was trying to argue that since Baker was guilty, Schmanke must also be guilty. We agreed. *Id.* Similarly in this case, we do not think the prosecutor was arguing that because the other "victim" defendants tried to fool paramedics, Israel was also guilty of fraud. We see no impropriety here.

■ Israel also objects to the prosecutor's comment that "the overall scheme can be established through the admissions of the defendants themselves, through their own statements and through the documentary evidence...." Tr. at 10428. This is hardly an improper argument; there is no suggestion that Israel is guilty because of the statements of other defendants.

■ Israel next argues that the prosecutor's reference to his physician's testimony was improper. Dr. Chand treated Israel shortly after his accident. The prosecutor argued that "it was part and parcel of this scheme that the defendants were attempting to fool, to dupe these doctors to persuade them that they were actually hurt." Tr. at 10436. He argued that Chand's testimony indicated that the reports of Israel's injuries were ambiguous.

> There is no clear objective indication of any injury for any of the defendants in this case. It is all ambiguous. It is all based upon subjective complaints. That was what the scheme was all about, made [sic] the subjective complaints, ... persuade the hospital technicians that you're hurt, it will inflate the medical bills, it will inflate the specials.

Tr. at 10436–37. There was no objection. Although the prosecutor here skirted closer to inviting the jury to infer that because there was no evidence of his injury, as there was no evidence of the other "victim" 's injuries, Israel must have been faking too, and also a member of the mail fraud scheme. But the jury could also have understood the prosecutor to be simply challenging the weight of Israel's medical evidence: because the medical reports and testimony were ambiguous, it is more likely that Israel faked his injury as part of his own staged accident. Indeed, the eyewitness testified that the car never touched Israel.

Israel's complaints about the prosecutor's closing argument seem to derive largely from the simple fact that his accident was similar to the other accidents charged in the indictment. He argues that the prosecutor's recitation of the facts was improper. Israel Br. at 13. The prosecutor stated:

> The accident occurred on October 30, 1982. Carl Langley was the driver. Margaret Neely a friend of Harry Patterson, Forest Bailey's cousin. Ben Israel, McClurkin's brother. McClurkin represents both. Long treats both...:

Tr. at 10809. Israel seems to argue that the prosecutor could not argue the evidence about his case because it was so similar to the evidence of the other accidents. The prosecutor was entitled to name the participants in Israel's accident— to identify the driver, the physician, and his insurance agent. The prosecutor was also entitled to point out that Israel's brother is Patrick McClurkin. Israel appears to challenge any recitation of these facts as unfairly prejudicial, but all evidence is "prejudicial" in the sense that it influences the jury's opinion, otherwise it would not be relevant. *See* Ronald Allen & Richard B. Kuhns, *An Analytical Approach to Evidence* 104–06 (1989). The evidence and argument Israel challenges, though powerful, were not unfairly prejudicial. Powerful evidence is not a ground for reversal.

■ Israel's final objection to the prosecutor's comments pertains to a remark made during rebuttal. The prosecutor was discussing Neely and Israel's accident. He said:

> This was a criminal enterprise of staggering dimensions. Over 27 participants, including the nine defendants in this courtroom. You may recall one of the last adjusters who testified in this case was Alicia McGowen.... And when Mr. Theis [Neely's counsel] asked her a question on cross examination, she said: "I thought I was being set up even at the

time." And she was right. She was being set up by Margaret Neely and Ben Israel and Carl Langley just as all the other adjusters and all the other insurance companies in this case were being set up by the defendants in this case. Tr. at 10816. Neely's counsel's objection was sustained and the district court instructed the jury to "disregard that comment." The prosecutor's comment was improper and it violated the district court's order that evidence against Neely and Israel be considered separately, and that their "accident" not be lumped together with the others. Because this comment was improper, we proceed to the second step of our analysis of prosecutorial misconduct. Some of the factors the Court discussed in *Darden* weigh in favor of Israel, others in favor of the government. There was a timely objection and the district court promptly informed the jury to disregard the improper argument. "We cannot, of course, know with certainty what effect this curative instruction had upon the jury, but the presumption in our system is that such instructions are taken seriously." *United States v. Napue*, 834 F.2d 1311, 1325 (7th Cir.1987); *United States v. Stillwell*, 900 F.2d 1104, 1112–14 (7th Cir.1990) (jury able to follow limiting instruction and ignore improper argument). Further, although the improper statement was not a trivial one, it was not so inflammatory that in the context of the entire trial it posed a substantial risk of undue prejudice. *Cf. Darden*, 477 U.S. at 180 n. 11, 106 S.Ct. at 2471 n. 11 (no reversal despite prosecutor's comment that, "I wish that I could see him [the defendant] sitting here with no face, blown away by a shotgun.").[2] Finally, there was strong evidence of Israel's guilt. This is the "most important factor" in the *Darden* analysis, and we believe it tips the scale in favor of the government. *Gonzalez*, 933 F.2d at 431–32. These three factors together outweigh the factors in Israel's favor: his counsel apparently did not invite the prosecutor's comments, and did

not have an opportunity to respond. Put simply, we do not think this reference was so prejudicial as to deprive Israel of a fair trial.

■ We have also considered whether all the challenged comments taken together were unfairly prejudicial. We find they were not. On one, perhaps two, occasions the prosecutor pushed or exceeded the bounds of proper argument. But in the context of the entire eleven-week trial, we find no basis to conclude that they unfairly prejudiced Israel's right to a fair trial.

■ Israel also challenges the sufficiency of the evidence against him. He bears a heavy burden. To be successful, he must show that viewing the evidence in the light most favorable to the government, no rational juror could have found all the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Weaver*, 882 F.2d at 1133. Mail fraud is defined in 18 U.S.C. § 1341. The statute provides that:

> whoever, having devised ... any scheme ... to defraud or for obtaining money ... by ... false or fraudulent pretenses, places in any post office ... any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom any such matter or thing, or knowingly causes to be delivered by mail ... any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

We reviewed the evidence against Israel when we evaluated his challenges to the prosecutor's closing argument. Considered in the light most favorable to the government, there is no question that the evidence is adequate to support the jury's verdict. Israel challenges the credibility of the eyewitness and of Aaron Long. He apparently misapprehends the nature of appellate review. It is not this court's function to reassess a jury's credibility determination.

---

**2.** In *Darden*, the evidence of guilt was "overwhelming," and defense counsel invited the prosecutor's comment. 477 U.S. at 179, 182, 106 S.Ct. at 2470, 2472. In other circumstances, for example where the evidence of guilt was not so strong, the comment might well require reversal.

*United States v. Lendmann,* 757 F.2d 916, 919 (7th Cir.1985). Israel does not cite a single case to bolster his argument that the evidence supporting his conviction is insufficient. We have not found one either. Further, we believe the government has established that he knowingly participated in the scheme to defraud. It introduced evidence that (a) Israel's brother called Long a week before Israel's accident to inform him that Israel was going to be in a staged accident and to expect him; (b) the car never struck Israel; (c) Israel was not actually injured; (d) Israel submitted a false claim for lost wages; and (e) he submitted false claims for medical bills. This evidence is sufficient to support a rational jury finding that Israel is guilty of mail fraud.

*Steve Johnson*

■ Johnson was convicted of five counts of mail fraud in violation of 18 U.S.C. § 1341. He was sentenced to sixteen months in prison and five years probation. Johnson was a driver in one of the staged accidents—the one involving Aaron Long's father and Cornell Stokes. Tr. at 5545–47. In his joint brief with Bailey, he argues that the district court erroneously admitted evidence of other wrongful acts under Federal Rule of Evidence 404(b). He also argues that the court violated his Sixth Amendment rights when it limited the scope of cross examination of Long. We considered and rejected this second challenge in our discussion of Bailey's claims. This leaves the 404(b) claim.

Again, evidence may be admitted under Rule 404(b) to establish the defendant's state of mind or intent. Johnson alleges that the district court's admission of evidence of his involvement in the second insurance fraud scheme was erroneous. Most of the evidence admitted under 404(b) related to Bailey's involvement in the automobile strip-and-scrap scheme. Only one witness testified about Johnson's participation. Marshall Wade testified that Johnson drove him to a grocery store, and Wade called his insurance company from the store to report the theft of his car. After Wade completed the theft report, Johnson drove him home. Tr. at 5122–24 (testimony of Marshall Wade).

Johnson alleges that he was prejudiced by the admission of this evidence because his role in the other scheme (driving Wade to the store) shed no light on his intent when he acted as a driver in the staged accident. This evidence, he contends, supports only the forbidden inference that because he participated in one fraudulent scheme at Bailey's direction, he participated in another. The district court disagreed. It found that evidence about Johnson's participation in the second scheme similar and relevant because "it was a scheme to defraud insurance companies regarding cars [and] ... in the relevant time period...." Tr. at 4140. The court's analysis of Johnson's 404(b) motion mirrored its consideration of Bailey's motion. So does ours. We do not agree that the evidence "had a devastatingly prejudicial effect on his case." Bailey & Johnson Brief at 14; Tr. at 10822–23 (limiting instruction to jury). Both schemes involved fraudulent reports to insurance companies, and Johnson's participation in the uncharged conspiracy sheds light on his state of mind. We do not believe the district court abused its discretion in admitting Wade's testimony about Johnson's role in his false theft claim. Accordingly, we affirm his conviction.

*Margaret Neely*

■ Neely was convicted of four counts of mail fraud in violation of 18 U.S.C. § 1341. She was sentenced to five years probation with a condition that she perform 750 hours of community service and make restitution to Allstate Insurance. Neely argues that her conviction should be reversed because the district court should have severed her trial and because there was insufficient evidence of her guilt. Her argument on the first point is somewhat misleading: "The district court should have given Ms. Neely a separate trial, since the court determined at the start of trial that Ms. Neely was not part of the mail fraud scheme alleged in the indictment." Neely Brief at 11. "At the very start of the trial, the district court determined that the gov-

ernment could not tie Ms. Neely into a single unified scheme." *Id.* at 13.

But that is not what the district court found. It found that the government had not satisfied the requirements of *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), and, therefore, the statements of co-conspirators could not be admitted against her. Federal Rule of Evidence 801(d)(2)(E) provides that statements made "by a co-conspirator of a party during the course and in furtherance of the conspiracy" are not hearsay and are admissible evidence. *United States v. Haddad*, 976 F.2d 1088 (7th Cir.1992); *United States v. Arvanitis*, 902 F.2d 489, 500 (7th Cir.1990). A district court may admit evidence under the rule if it finds by a preponderance of the evidence that: (1) the declarant and the defendant were members of a conspiracy; (2) the conspiracy existed at the time the statement was made; and (3) the statement was made in furtherance of the conspiracy. *Haddad*, 976 F.2d 1088; *United States v. Rodriguez*, 975 F.2d 404 (7th Cir.1992); *United States v. Reiswitz*, 941 F.2d 488, 497 (7th Cir.1991); *Arvanitis* (citing among other authorities *United States v. Santiago*, 582 F.2d 1128, 1134 (7th Cir.1978)). The court found that the requirements were not satisfied, and refused to admit co-conspirator statements against Neely.

But the court gave broader limiting instructions than this ruling required. It instructed the jury not to consider *any* of the evidence relating to accidents other than Neely's against her. Before closing arguments the court clarified the situation:

Ferguson [the prosecutor]: Judge, I do want to clarify the record on this mail fraud scheme aspect. If I understand what you're saying, the ruling was dealing with co-conspirator statements.

The Court: Yes, it was.

Ferguson: But because you gave the broad instruction, we are, in effect, stuck with the instruction?

The Court: Right. There was no objection—

Ferguson: I understand that. You did not rule—at no point did you rule that

Neely and Israel were not members of the scheme?

The Court: No, I never did. I just said that there had not been a sufficient showing based on the Santiago proffer that had been made that the co-conspirator statements were admissible against them for [the] purpose of showing they were involved in the mail fraud scheme. So you couldn't use the statements of other co-conspirators to try to show their involvement, because you hadn't met the threshold mark.

Tr. at 10134. Thus Neely received broader limiting instructions than she was entitled to, and the court never ruled that she was not part of the over-arching scheme.

On appeal, Neely argues that she was entitled to a separate trial, and that joinder was prejudicial because very little of the evidence presented at trial was admissible against her. She also argues that there was a variance between the indictment, which charged a single conspiracy joined by all the defendants, and the proof at trial, which she alleges established multiple schemes.

Neely's variance argument is simply without merit. Count two of the indictment charged all of the defendants with substantive mail fraud in that they devised a scheme to defraud insurance companies and stage accidents in furtherance of the scheme. Count two recited the details of the over-arching mail fraud scheme including all the staged accidents. In its charge to the jury, the court stated simply that "Margaret Neely is charged with the crime of mail fraud. And the defendant Margaret Neely denies that she is guilty of the charge." Tr. at 10827. She was not convicted under count two; she was convicted of counts 23, 24, 25, and 26—those that involved her accident alone. Judgment in a Criminal Case No. 87 CR 276–27, Neely Appendix at 36a. She was not charged or convicted of conspiracy.

The Supreme Court has held that it is prejudicial error to charge a person with a single conspiracy, present evidence of several conspiracies, and fail to instruct the jury that evidence of several conspiracies

does not constitute proof of the single conspiracy charged. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *United States v. Flood,* 965 F.2d 505, 508–09 (7th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992). A variance arises when the facts proved by the government at trial differ from those alleged in the indictment. *United States v. Townsend,* 924 F.2d 1385, 1389 n. 1 (7th Cir.1991). But Neely was neither charged nor convicted of conspiracy. Her variance claim falls flat.

■■■■■ The next question is whether the district court erred in refusing to sever her trial under Federal Rule of Criminal Procedure 14. Rule 14 provides that a district court may grant a severance when it appears that a defendant is unfairly prejudiced by a joint trial with her co-defendants. We review a district court's denial of a severance motion for an abuse of discretion. *United States v. Balzano,* 916 F.2d 1273 (7th Cir.1990); *United States v. Moya–Gomez,* 860 F.2d 706, 754 (7th Cir. 1988), *cert. denied sub nom., Estevez v. United States,* 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989). In order to determine whether severance is appropriate, a trial court is to balance the cost of conducting separate trials against the possible prejudice inherent in a single trial. *Moya–Gomez,* 860 F.2d at 754. We have noted "the strong public interest in having persons jointly indicted tried together...." *United States v. Percival,* 756 F.2d 600, 610 (7th Cir.1985). *See also United States v. Harrison,* 931 F.2d 65, 67 (D.C.Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 408, 116 L.Ed.2d 356 (1991). The inquiry is most appropriately conducted by the district court, and consequently a defendant on appeal "bears an extremely difficult burden of showing ... that the district court abused its discretion." *Id.* A defendant must show that she was actually prejudiced by the denial. We have explained that a defendant must establish "not merely that a separate trial would offer her a better chance of acquittal," but that she could not have a fair trial without severance. *United States v. Gonzalez,* 933 F.2d 417, 425 (7th Cir.1991) (quoting *United States v. Peters,* 791 F.2d 1270, 1301 (7th Cir.), *cert. denied sub nom., Odoner v. United States,* 479 U.S. 847, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986)).

Neely claims she was prejudiced by the joint trial because the jury heard vast quantities of evidence that was not admissible against her, the evidence against her was "thin," and because the prosecutor made improper closing arguments. She contends that the jury "could not have understood, much less followed, the limiting instructions, particularly in light of the government's final arguments." Neely Brief at 22. We disagree. Neely's argument is a variant of the one we explored in *Gonzalez:* the defendant alleges severance was necessary because of a great disparity of evidence between the moving defendant and her co-defendants. 933 F.2d at 425–26; *United States v. Diaz,* 876 F.2d 1344, 1357 (7th Cir.1989). In these situations, "the relevant inquiry is whether it is within the jury's capacity to follow the trial court's limiting instructions requiring separate consideration for each defendant and the evidence admitted against him." *Gonzalez,* 933 F.2d at 426 (quoting *Moya–Gomez,* 860 F.2d at 765. "[J]uries ... are presumed capable of sorting through the evidence and considering the cause of each defendant separately." *Id.* (quoting *United States v. Williams,* 858 F.2d 1218, 1225 (7th Cir.1988), *cert. denied sub nom., Froschauer v. United States,* 488 U.S. 1010, 109 S.Ct. 796, 102 L.Ed.2d 787 (1989)).

We examined the district court's limiting instructions at length in our analysis of Israel's challenges to the government's closing arguments. The court repeatedly cautioned the jury not to consider evidence about the other accidents in its deliberations on Neely's guilt. "When deliberating over the charges of mail fraud against defendants Ben Israel and Margaret Neely, you may not consider any evidence that the court has instructed you to disregard." Tr. at 10215, R.Doc. 930, Instruction 47. *See also* Tr. at 843, 993, 1011, 1085. Although it may have been difficult for the jury to ignore the evidence of the other accidents,

we do not believe that the trial court abused its discretion in refusing to sever Neely's trial. The trial court is in the best position to evaluate the potential prejudice to a joined defendant, and Neely simply has not shown that the jury was unable to consider her case separately from the other defendants. In fact, the jury sent a note to the trial judge requesting a copy of the FBI report pertaining to an interview with Neely some three years after her accident. R.Doc. 947 (jury's note to district court). This evidence of individual consideration supports our conclusion that joint trial was not so prejudicial as to deprive Neely of a fair trial. *Cf. Gonzalez*, 933 F.2d at 426 ("Because the jury was properly instructed and directed to give individual consideration to each and every element of each crime against a particular defendant and because 'juries are presumed capable of sorting through the evidence and considering the cause of each defendant separately,' we are convinced that a jury, following these instructions, was able to give separate consideration to [the defendant's] case.") (quoting *United States v. Williams*, 858 F.2d 1218, 1225 (7th Cir. 1988)).

█ Neely also challenges the sufficiency of the evidence. For her claim to succeed, she must show that viewing the evidence in the light most favorable to the government, no rational juror could have found all the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Weaver*, 882 F.2d 1128, 1133 (7th Cir.1989). We reviewed the elements of mail fraud in our discussion of Israel's sufficiency claim. On appeal, Neely focuses on the intent elements of mail fraud; specifically, she alleges that there was insufficient evidence of her knowing participation in a mail fraud scheme.

Accepting Dr. Long's testimony in the light most favorable to the government and not making any credibility determinations, one might say that Forest Bailey and Long planned this accident, since Long testified that he had advance knowledge that Israel would be paying

him a visit. By Long's account, Long did not hear about Neely's involvement until after the accident, that Bailey would encourage Neely to seek Long's treatment. Neely Brief at 32–33. From these observations, Neely contends that the evidence supports her position that she was an unwitting participant in a staged accident. In other words, she just happened to be walking through a Jewel parking lot with Ben Israel (who knew of the impending accident), and Carl Langley hit her, the innocent pedestrian and missed Ben Israel, the intended "victim." Her friend Forest Bailey also happened to refer her to Aaron Long for treatment. To rebut this somewhat dubious scenario, the government presented an eyewitness who testified that he saw a car back slowly out of a parking space. The car hit Neely as she stood with Israel. She fell to the ground and screamed, "Help, help. I was hit. Call an ambulance." Tr. at 8051. Further, when Neely visited Long's office she completed an insurance claim form. The form included the following information:

Commercial Insurance: *Prudential*
Group Policy: *X* Individual Policy:
Policy Number:
Employer: *Nolan Harris*
Phone Number: *933–4700*
Address: *8547 So. Stony Island Chicago*
State: *IL* Zip: *60919*
In whose name: *John Neely*
Relation to Patient: *Husband*
WHO REFERRED YOU TO THIS OFFICE:
*Forest Bailey*

Neely Appendix at 39a. We have italicized the information Neely provided. The employer address is the address for Nolan Harrison's company, Impact Insurance. The government argued that Neely must have been a knowing participant in the fraud scheme because she lied on this form. It also implied that she meant "Nolan Harrison" when she filled in "Nolan Harris," but that she got the name wrong. It contended that she misrepresented her employer as Nolan Harris. Neely argues that she listed Harris as her husband's

employer. Taken in the light most favorable to the government, the form can be interpreted as a representation that Neely was employed by Nolan Harris. The form also supports an inference that she was a knowing participant in the staged accident because it states that she was referred to Long by Forest Bailey. On appeal she concedes that Bailey and Israel planned the accident. If she were a stranger to the scheme, why would Forest Bailey contact her and sent her to Long?

A second form, titled an authorization for release of records, was directed to Impact Consultants, at the Stony Island address. The form authorizes Impact to release wage and work information to Allstate. Neely maintains that she signed the form in blank and that McClurkin filled in the name of the employer and submitted the false wage claim.

In addition, the government presented the testimony of FBI Agent Smith. Smith interviewed Neely several years after her accident and testified that Neely's explanation of her accident changed as the interview progressed. First she stated that the accident was "legitimate and not staged." Tr. at 8408. Then she told Smith that she had been referred to Dr. Long by her attorney, Patrick McClurkin and had visited Long seven or eight times. Tr. at 8409. Her claim form stated that Forest Bailey referred her. Smith asked if she was employed when her accident occurred; she told him that she was not employed, but had applied for a job with an insurance company on Stony Island and 85th Street, and that she thought the company was Impact Insurance. *Id.* Impact Insurance was Nolan Harrison's company. Neely told Smith that she received $2,600 in settlement for the accident, and that she picked-up the check from McClurkin's office. After she received a second check, Neely told Smith that McClurkin had visited and asked for money to pay Dr. Long. Tr. at 8410–11. Neely then told Smith that she learned the accident was fraudulent when she cashed the insurance check. Tr. at 8412. After that, Smith testified, Neely changed her story and told him that "she really never learned that the accident was part of a scheme." *Id.* On cross examination, Neely's counsel asked Smith to read his notes regarding Neely's account of when she learned of the scheme. Tr. at 8422. Smith's notes said "I knew it was a scheme when after [sic] cashed check." *Id.* The FBI's 302 report stated: "Neely then stated that she knew the accident was a scheme after she cashed the check—cashed the check." Tr. at 8422.

Viewing this testimony together with the other evidence presented in the light most favorable to the government, the jury could rationally conclude that Neely was a knowing participant in the fraudulent accident and insurance claim scheme. First, it seems highly unlikely that a pedestrian could have blundered into a staged accident. Further, the inconsistencies and misstatements in her insurance information and wage claim forms, and in her later statement to Agent Smith support an inference that Neely was conscious of her guilt and was trying to cover-up. Moreover, she told Smith she had applied for a job with an insurance company at the time of her accident; both forms represent that she was currently employed by the company. Despite her theory that McClurkin filled in the second form which she signed in blank, the jury was entitled to find that she did not sign a blank form and thus was aware of the misstatements. Finally, the jury could infer from eyewitness's description of her rather hyperbolic behavior at the scene of the accident that she was feigning injury. This evidence is sufficient to support the jury's conclusion that Neely committed mail fraud.

*Cornell Stokes*

■ Stokes was convicted of five counts of mail fraud in violation of 18 U.S.C. § 1341. He was sentenced to six months in prison, to be followed by five years probation with a requirement that he perform 300 hours of community service. Stokes alleges that he was denied a fair trial because the district court erroneously admitted statements of alleged co-conspirators against him. Stokes was the "victim" in one accident. Although his brief is not a model of clarity, he appears to argue that

the government's proffer before trial did not satisfy the burdens imposed by *United States v. Santiago,* 582 F.2d 1128 (7th Cir. 1978), and, therefore, that the district court should not have admitted the testimony of his "co-conspirators" against him. He further asserts in rather cursory fashion, that he was unduly prejudiced by the joinder of his case with the other defendants' and that the district court's refusal to sever his trial constitutes reversible error. His entire argument on this issue is: "Since the co-conspirator statements account for 90% of the case against Stokes, he is entitled to a new trial at which this evidence is not admitted. (Stokes also incorporates by reference the severance arguments advanced in the Neely brief.)" Stokes Brief at 27. Finally, Stokes makes the following argument:

> [T]his Court has within its discretion to overturn STOKES' conviction "on the ground of variance," since STOKES has shown that he did not conspire with each defendant (as alleged in the indictment) *and* "that he was prejudiced by being tried with defendants who were not his co-conspirators." *Townsend,* 924 F.2d at 1393. The Government's evidence was insufficient to prove STOKES joined the massive conspiracy alleged in the indictment. Viewed in a light most favorable to the Government, the evidence only proved STOKES joined a limited conspiracy involving a single transaction. Therefore, his conspiracy conviction must be reversed.

Stokes Brief at 27–28. Stokes was not convicted of conspiracy; he was convicted of mail fraud.

Not surprisingly, Stokes claim that there was a variance between the indictment and the charges proven at trial was not raised below. Therefore we review only for plain error. *See United States v. Navarez,* 954 F.2d 1375 (7th Cir.1992). "We reverse on the basis of plain error only when we are 'convinced that it is necessary in order to avert an actual miscarriage of justice.'" *Id.* at 1380 (quoting *United States v. Requarth,* 847 F.2d 1249, 1254 (7th Cir.1988)). His claim that his "conspiracy conviction" must be reversed "on the ground of vari-

ance" is puzzling. *See* Stokes' Brief at 27–28. Stokes was not convicted of conspiracy. He was not charged with conspiracy, and was only convicted of substantive mail fraud under counts thirty-one to thirty-five, those pertaining to his accident. *See* Stokes' Brief at 14, Appendix at 10 (Judgment in a Criminal Case) ("The defendant is convicted of the offenses of: knowingly, willfully and unlawfully using the mails for the purpose of executing a scheme to defraud in violation of [18 U.S.C. § 1341] as charged in counts S31, S32, S33, S34, and S35 of the indictment."). Because Stokes was neither charged with nor convicted of conspiracy, there can be no relevant difference between the offense charged in the indictment and the government's proof. *Cf. United States v. Robinson,* 956 F.2d 1388, 1393 (7th Cir.1992), *petition for cert. filed,* 61 U.S.L.W. 3083 (July 23, 1992) (No. 92–184); *United States v. Napue,* 834 F.2d 1311, 1333 (7th Cir.1987). There is no conspiracy conviction to reverse, and any variance claim is meritless.

■ Stokes next challenges the admission of his co-conspirators' statements. As we have discussed, statements made by co-conspirators during the course and in furtherance of the conspiracy are not hearsay and are admissible evidence. Fed.R.Evid. 801(d)(2)(E). Co-conspirator statements may be admitted if the court finds by a preponderance of the evidence that: (1) the declarant and the defendant were members of a conspiracy; (2) the conspiracy existed at the time the statement was made; and (3) the statement was made in furtherance of the conspiracy. *United States v. Rodriguez,* 975 F.2d 404 (7th Cir.1992); *United States v. Reiswitz,* 941 F.2d 488, 497 (7th Cir.1991). To determine whether the defendant joined the conspiracy, the court may consider both independent evidence and the substance of the statements themselves. *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); *United States v. Romo,* 914 F.2d 889, 896–97 (7th Cir.1990), *cert. denied,* ─── U.S. ───, 111 S.Ct. 1078, 112 L.Ed.2d 1183 (1991); *Arvanitis,* 902 F.2d at 500. We review a district court's findings under

Rule 801(d)(2)(E) for clear error. *United States v. Johnson*, 927 F.2d 999, 1001 n. 1 (7th Cir.1991).

Stokes argues that the second prong of the test has not been satisfied. Although he concedes that there was a conspiracy to defraud insurance companies, he contends that he was not a member of this over-arching conspiracy. Instead, he argues he was only part of a smaller conspiracy involving only his accident. Because he did not join the larger conspiracy, he argues, the evidence of the other accidents should not have been admitted against him. The district court disagreed. It reviewed the following evidence: Aaron Long testified that Stokes was waiting to participate in a staged accident when Long asked Bailey to stage an accident for Long's father. Tr. at 5537. Bailey told Long that Stokes had been waiting to be in an accident, had obtained insurance for that purpose, and that Stokes would also be a victim in the father's accident. Long tried to convince Bailey to stage an accident with his father as the sole victim, but Bailey refused. *Id.* Bailey assured Long that Stokes "was completely confidential" and had to be included because he "had been constantly asking to be in an accident." *Id.* at 5541, 5544, 10122.

Stokes accident went according to plan and he and Long's father faked injuries. After Stokes was discharged from the hospital, he visited Long's office. Long did not submit phony bills for Stokes right away because the core conspirators got wind of an investigation of the previous accidents. Tr. at 5554. Four months after the accident, Stokes visited Long's office. Long told Stokes that he would not submit any bills until they discovered the status of the investigation of the other accidents. *Id.* at 5557. Stokes agreed, and did not visit Long again for several months. *Id.* In the summer of 1985, Stokes informed Long that he was going to hire another attorney to pursue his claim and asked Long to release his medical records. *Id.* When Long suggested that Stokes discuss his plans with Bailey before Long released the records, Stokes stormed out of his of-

fice. *Id.* at 5558. Despite their efforts, Bailey and McClurkin were unable to pacify Stokes, and worried that he would hire an outside attorney and let him in on the scheme. *Id.* at 5560. Faced with this pressure, Long prepared a false medical bill for Stokes and sent it to McClurkin for submission. *Id.* at 5561.

Based upon this evidence, the court found that Stokes joined the broader conspiracy. Tr. at 10123. The court explained:

> The reason that I feel that the testimony, the additional testimony that was elicited at trial with respect to Stokes saying he wanted to know when his accident was going to occur and that he would keep quiet about it, that he could be trusted, the Court feels that I can infer from that that he was aware that there was a scheme of some kind going on.... I believe that proper inferences can be drawn since I'm drawing it in the light most favorable to the government to show that he knew what the scheme was.

Tr. at 10238–39. We do not believe the district court's finding that it was more likely than not that Stokes' joined the overarching conspiracy is clearly erroneous. Based upon our own review of the record, including Long's testimony, we are convinced that there is adequate support of the district court's finding. Stokes participated in an accident with another "victim," and he agreed to wait more than nine months to submit his claim for payment (the staged accident occurred in September 1984, the medical bills were not submitted until July 1985) because of the ongoing investigation. Taken with his assurances to Bailey about his trustworthiness, these facts provide adequate support for the trial court's findings. We find no clear error here.

Next, Stokes contends that he was entitled to severance of his trial. Stokes adopts Neely's arguments without adding any additional authority or support for his claim. The district court held that Stokes "raises no arguments that distinguish him from Neely" and denied his claim. R.Doc. 491. We have rejected Neely's severance

claim, and find Stokes' claim to be equally without merit.

### III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.